McAdam, J.
The action is to recover damages for personal injuries to the plaintiff.
*81 On October 9, 1889, the plaintiff, a married woman, purchased a ticket for herself and son for transit on defendant’s road. As she was going upon the rear platform of the car to enter the same, an iron gate was forcibly swung to by defendant’s brakeman, striking her a severe blow on the right side, which was immediately followed by bearing down pains and ultimately by a miscarriage. The evidence clearly established the defendant’s liability for the wrong, and the jury awarded the plaintiff a verdict: for $5000, which, in view of the consequerfces of the injuries, is not in our judgment excessive. The exceptions, taken during the trial have been strenuously urged as reasons why the judgment entered on the verdict should" be set aside, and chief among these is the objection taken-to the ruling of the court excluding the evidence of Doctors Bird and B'urridge, who professionally attended the plaintiff some months prior to the accident, and knew of her physicial condition before she met the injury of which: she now complains.
The evidence was offered by the defendant and excluded under the objection of the plaintiff that the questions propounded called for the disclosure of information acquired by the witnesses while attending the patient, in a professional capacity, and were consequently contrary to the provisions of section 834 of the Code.
The defendant claims that by bringing the action, and putting her physical condition on trial, she waived the privilege of the statute, and the testimony thereby became admissible. A number of authorities have been cited in support of this view, but a careful examination of the Code demonstrates their inapplicability. In Treanor v. Manhattan R. Co. (28 Abb. N. C. 47) the action was for an injury to plaintiff’s head. The plaintiff testified to the nature and extent of the damage. The defendant thereafter called the physician who attended the plaintiff for the injury complained of, and when interrogated as to the condition in which he found plaintiff’s head, the evidence} *82 ■was excluded,, as privileged, and for such exclusion the judgment was reversed. The evidence excluded might have contradicted the plaintiff as to the very injury about which she had testified .in her direct examination, was material and relevant to the issue, and on that ground was admissible.
So, in Marx v. Manhattan Railway Co. (56 Hun, 575) • it was held, that if a party testify to a confidential interview with his physician, his adversary may call the physician to contradict the story of the patient. The court in that case placed its decision upon the ground that “ the evidence offered related to the same interview as to which the plaintiff had testified and to the occurrence of which he had preténded to give an account,” and “ having himself gone into the privileged domain to get evidence upon his own behalf, he cannot prevent the' defendant from assailing such evidence by the only testimony available . :for that purpose.”
These authorities have no application, for in those . .cases the plaintiff by his own act had opened the door for ,the admission of the testimony offered, and in that man- , ngr effectually waived the privilege of the statute. In the ..present instance, the plaintiff had not on her direct examination testified to any fact which made the testimony of Doctors Bird and Burridge relevant or material to the issues on trial-. They had attended the plaintiff prior to the-accident complained of on the trial, had no knowledge ■qf her physical condition at that time or subsequently. . Upon cross-examination, however, the defendant entered upon a lengthy investigation as to the prior history of the ■.plaintiff, the ailments with which she had been troubled, ■ the names of the physicians she had consulted, and the troubles" for which they had prescribed-; and upon this - cross-examination, the defendant bases the entire theory .qf waiver which it now urges. There was clearly no waiter, the privilege belonged to the plaintiff, could be waived by her consent or by some act of hers tantamount thereto. *83 No act of the defendant could effect any such result against the plaintiff’s will. The privilege is founded on public policy and in all cases where it applies, the seal of the law must forever remain, until it is removed by the act or consent of the patient (cases collated in Westover v. Aetna Ins. Co., 99 N. Y. at p. 58). In Hope v. Troy & L. R. R. Co. (40 Hun, 438) it was held that a patient calling his physician to testify, does not thereby waive his right to object to other physicians, who may have treated him, testifying upon the same subject (see, also, Record v. Village of Saratoga Springs, 46 Hun, 448 ; Mellor v. R. R. Co., 105 Mo. 455 ; S. C., 16 Southern Rep. 850).
The ailments for which Doctors Bird and Burridge treated the plaintiff were not of an obvious nature, such as injuries to the leg or skull, but were of an occult character which could be ascertained and treated only by reason of the highest confidence possible to bestow upon professional men, and it would have been a gross breach of privilege to have allowed them to break the seal of secrecy, by testifying to" any such matters.
In Sloan v. N. Y. Central R. R. Co. (45 N. Y. 125), the plaintiff, a female, sued to recover damages for injuries received, and recovered a verdict for $12,000. The defendant at the trial asked Dr. Rice, whether the plaintiff had venereal disease while under his care as a physician. The court held that the evidence was properly excluded at the trial, and affirmed the judgment recovered below.
In People v. Murphy (101 N. Y. 126) it was held that a physician who attended a female after an abortion had been produced, was "incompetent under the statute to testify as a medical expert that the crime had been committed. Indeed, the courts have invariably held to the doctrine, that the protection from disclosure of information acquired in the confidential capacity of physician must be enforced, .unless the patient, either expressly or by some affirmative act of his, waives the benefit of the rule.
If the defendant’s purpose in calling Doctors Bird and *84 Burridge as witnesses was not to contradict the facts brought out by it on cross-examination of the plaintiff, then the materiality of the proposed evidence was not obvious, and the defendant ought to have indicated to the court in some form why their testimony should be1 admitted (Trustees First Baptist Church v. Brooklyn Fire Ins. Co., 23 How Pr. at p. 450).
The exceptions taken to the hypothetical questions put to the medical experts whose testimony was received, are without merit. The form of the questions are similar to those sustained in Filer v. N. Y. Central R. R. Co. (49. N. Y. 42) and Brown v. N. Y. Central R. R. Co. (32 Id. 598), see also Keane v. Village of Waterford (130 Id. 188). The evidence showed that the results anticipated by the experts were reasonably sure to follow from the injury complained of, and this is all the law requires to make the testimony competent (Strohm v. R. R. Co., 96 N. Y. at p. 306; Turner v. City of Newburgh, 109 Id. 301 ; Griswold v. R. R. Co., 115 Id. 61). Such questions to experts may be based either on an acquaintance with the part whose condition is under investigation, upon a medical examination of him which he has made, or upon a hypothetical case submitted to the witness based on testimony already in the case (see cases collated in Lawson on Expert Ev. 144).
These rules were in no instance violated, and the questions and answers received conform to all legal requirements. The case was carefully tried and submitted to the jury. The exceptions to the charge and the refusals to charge are without merit.
It follows that the judgment and order appealed from must be affirmed with costs.
Sedgwick, Ch. J., and Freedman, J., concurred.
Note on the new rule as to Examination of Physician or.
Surgeon in “Actions for Personal Injuries.”
In connection with this case it will be useful to direct attention to the amendment of 1893 to the section of the N. Y. Code of Civil *85 Procedure which protects privileged information acquired by physicians and surgeons. It takes effect July i, 1893 (L. 1893, c. 295).
Some interesting questions may arise upon the construction of this amending clause.
The apparent, main intent is to amend the restriction imposed by the privilege.
The language used is as follows:
“ In an action for the recovery of damages for a personal injury the testimony of a physician or surgeon attached to any hospital, dispensary or other charitable institution as to information which he acquired in attending a patient in a professional capacity, at such hospital, dispensary, or other charitable institution shall be taken before a referee appointed by a judge of the court in which such action is pending; provided, however, that any judge of such court at any time in his discretion may, notwithstanding such deposition, order that a subpoena issue for the attendance and examination of such physician or surgeon upon the trial of the action. In such case a copy of the order shall be served, together with the subpcena. Sections 872, 873, 874, 875, 876, 879, 880, 884, and 886 of this Code apply to the examination of a physician or surgeon as prescribed in this section.”
In connection with this provision should be considered the amendment to section 872 (as to the contents of an affidavit to obtain examination before trial) to the effect that “and if the action is to recover damages for personal injuries that the defendant is ignorant of the nature and extent of such personal injuries ;” and there should be noticed, also, the amendment to section 873, in respect to the order for examination, in which the following clause is now added: “In every action to recover damages for personal injuries the court or judge, in granting an order for the examination of the plaintiff before trial, may, if the defendant apply therefor, direct that the plaintiff submit to a physical examination by one or more physicians or surgeons, to be designated by the court or judge, and such examination shall be had and made under such restrictions and directions as to the court or judge shall seem proper. In any action brought to recover damages for personal injuries, where the defendant shall present to the court or judge satisfactory evidence that he is ignorant of the nature and extent of the injuries complained of, the court cr judge shall order that such physical examination be made.”
It will be observed that all these amendments are in terms applicable to “ actions for the recovery of damages for a personal injury."
*86 By § 3343, subd. 9, of the same Code, “ a ‘ personal injury ’ includes libel, slander, criminal conversation, seduction, and malicious prosecution ; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another.”
It is, of course, probable that the draughtsman of this amending statute had in mind only negligence cases, and the like, where injury to the plaintiff’s person is in question, but of course there are ■ not infrequently cases of the other classes mentioned in the statutory definition in which the examination of a physician or surgeon may be desired and may perhaps be admitted under this amending statute.
The first amendment, taking away in part the privilege, is not in terms confined to cases where the examination sought relates to physical condition nor to the condition of thz. plaintiff, or even to that of a.party ; and if the statutory definition be applied, an action by the executor or administrator to recover the damages sustained by the next of kin for a wrongful act or neglect causing death, would be within the amendment abrogating the privilege, although not within the amendment of the sections relating to examination before trial.
Premising thus, that the two amendments last above quoted do not purport to apply to all the cases to which the amendment first stated may possibly apply, it will be convenient to consider the effect of this act in reference to examination before trial:
The cases cited below, holding that the court has no power to require the plaintiff to submit his person to an examination before trial, are superseded : McQuigan v. Delaware, Lackawanna & W. R. Co., 129 N. Y. 50; Roberts v. Ogdensburgh, etc. R. Co., 29 Hun, 154 ; Neumann v. Third Avenue R. R. Co., 50 Super. Ct. 416; Elfers v. Woolley, 26 N. Y. St. Rep. 681.
This power has also been denied in the United States Supreme Court, in Union Pacific Ry. Co. v. Botsford, 141 U. S. 250.
The cognate, but somewhat different question as to whether the court have power to compel the plaintiff to exhibit his person to the jury on the trial, is not, of course, directly determined.
In respect to both these questions, see an interesting series of articles by Irving Browne, in the current volume of the “ Green Bag ” (1892-3).
It is to be observed that the amendment to section 873 is in terms, that the court or judge shall order an examination if defendant shows his ignorance, etc. One question that will probably be raised is, whether this imperative language alters the discretionary *87 character of the application, which was established in Jenkins v. Putnam, 106 N. Y. 272.
The better opinion seems to be that the matter is still discretionary, though the order may be reviewable at General Term.
A good reason for giving a strict construction to these provisions is the fact that they practically give a discovery to one party of the case of the other party, which is contrary to the uniform principle heretofore applied, both at law and in equity, and both upon the examination of a party and upon the discovery of books and papers..
The apparent effect of the amendments to sections 872 and 873, taken together and given the full force of which the language is. capable, would be, that the defendant must, in all cases, make affidavit to his ignorance of the nature and extent of the injury, and that when the court or judge finds that ignorance sufficiently-proven, the order must be made, but even if it were not sufficiently proven the order may be made.
Returning now to the question of the privilege of a physician, it will be observed that this provision, also understood according to the definition of “ personal injury,” under the Code, would apply to actions for defamation, assault, crim. con., seduction, etc.
This provision contains independent authority to a judge of the court in which the action is pending to appoint a referee to take the physician’s, testimony, but this must be taken in the manner prescribed for examination before trial.
The terms “ hospital, dispensary or other charitable institution,” will doubtless be construed to refer to public institutions only.
Perhaps the most important clause of the amendment is the provision that “ any judge of such court, at any time in his discretion, may, notwithstanding such deposition, order that a subpoena issue for the attendance and examination of such physician or surgeon upon the trial of the action.”
This clause, since it is given in the form of a proviso, giving the power “ notwithstanding,” seems to be applicable only to cases where a deposition has been taken, the object apparently being to enable the judge to require the examinee to appear for further examination at the trial, in the nature of a cross-examination.
The question is likely to arise, whether such a physician or surgeon can be required to attend for examination on the trial in this class of cases, unless an order to take his deposition be first executed, and' thereafter a subpoena for his examination on the trial is issued by a judge of the court, and a copy of the order served with the subpoena ; and also the question whether he can be required to give opinion-evidence without an expert’s fee.
*88 Taken in connection with the claim said to be made by some railroad companies, to take possession of the person of an injured' passenger, and send him to a hospital, as against the claim of his friends or relatives to take charge of him, the importance of these provisions is easily seen.
If steps in the amendment of the law in this direction should lead to conferring upon the court, or the presiding judge at the trial, power to subpoena any expert deemed by the court necessary and to examine him, subject of course to examination also by counsel, it cannot be doubted that a useful reform would be initiated ; there is to-day some sanction for allowing a judge to subpoena witnesses suasponte, in the case of what are called “surrogates’ witnesses ” in probate proceedings.