(59 App. Div. 363.)

## FOX v. UNION TURNPIKE CO.

(Supreme Court, Appellate Division, Third Department. March 6, 1901.)

1. TURNPIKES—DEFECTS—INJURIES—TRIAL.

Where plaintiff's evidence was that she was 52 years old, and prior to an accident from an alleged defect in a turnpike weighed 192 pounds, and was able to attend to her work and business, but as a result of her injuries she suffered from fainting spells and hemorrhages, and was reduced in weight to 128 pounds, and was unable to work, and defendant introduced expert testimony to show that the injuries were feigned or attributable to plaintiff's time of life, the question of the extent of the injuries was for the jury.

2. SAME—NEGLIGENCE—BRIDGES—RAILING.

Where an approach to a bridge on a turnpike was 88 feet long, 25 feet wide at its commencement, and 18 feet wide where it joined the bridge, and at that point was a little over 10 feet high, the question of negligence in the road company in not providing railings was for the jury, and it was not error for the court to refuse to charge that the bridge was not maintained in a negligent manner.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where plaintiff's driver was experienced, and the horse gentle, and plaintiff was injured by the horse shying and jumping off the approach of a bridge which was between 18 and 25 feet wide, and not supplied with railings, over which plaintiff was attempting to pass on a starlight evening after 9 o'clock, the question of contributory negligence was for the jury.

4. WITNESSES—PHYSICIAN—COMPETENCY—WAIVER.

Under Code Civ. Proc. § 836, providing that the incompetency of a physician to testify as to consultations with a patient may be waived by the patient, a patient, by testifying generally as to alleged injuries and their treatment, but without stating conversations with him or detailing what was done by him, did not waive the privilege.

Appeal from trial term, Albany county.

Action by Harriet L. Fox against the Union Turnpike Company for personal injuries from an alleged defect in defendant's turnpike. From a judgment in plaintiff's favor, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

John H. Gleason, for appellant.
Samuel T. Hull and J. Newton Fiero, for respondent.

CHASE, J. The defendant is a domestic corporation, and the owner of a turnpike road which includes the eastern approach to the

Verplanck Bridge, in the town of Westerlo, Albany county. The bridge is a single-span, iron structure; and the eastern approach is a fill between bluestone retaining walls, commencing at the level of the highway, 88.9 feet from the bridge, and extending to the bridge, where it is a little over 10 feet above the adjoining lands. The approach is 25 feet wide at its commencement, and 18.7 feet wide at the bridge; and at the time of the accident alleged in the complaint, and for more than one year prior thereto, it had no railings or guards. On the 14th day of November, 1896, between 7 and 8 o'clock in the evening, the plaintiff and her son-in-law, Frank Reynolds, started from the plaintiff's home, in Ravena, in an open wagon, drawn by one horse, to go to her daughter's residence, in the town of Westerlo. The horse was a gentle one, and Reynolds, who did the driving, was acquainted with the horse and accustomed to driving horses. The Verplanck Bridge was on the usually traveled road from Ravena to Westerlo. It was a starlight night, and between 9 and 10 o'clock, as Reynolds was carefully driving up the approach to the bridge, and when within about 56 feet of the bridge, the horse, for some reason not disclosed in the record, suddenly shied, and went over the side of the approach into the adjoining field, carrying with him the wagon and its occupants. The plaintiff fell from the wagon upon the ground in the field, and immediately became unconscious, and remained in an unconscious condition until Reynolds had secured the horse and had gone to a farm house some 500 feet away and obtained help, after which the plaintiff was assisted to the farm house; and she there remained until the next day, when she was taken in a carriage to her home, in Ravena. There is no evidence in the record contradicting in any substantial particular this evidence produced on the part of the plaintiff. The jury rendered a verdict in favor of the plaintiff for $1,400. The defendant insists that the facts proven do not justify a recovery against the defendant, and further insists that the plaintiff is feigning her injuries, and that the damages are excessive. The plaintiff is 51 years of age, and for 2 years prior to the accident had carried on a dressmaking business, as a separate and independent business from that of her husband, and had earned an average of one dollar a day. The plaintiff testifies that immediately following the accident she had severe pain through her back and between her shoulders, and that since that time she has had continuous pain from her injuries. Prior to the accident she weighed 192 pounds, and at the time of the trial she weighed 128 pounds. She now has frequent dizzy, fainting, and sinking spells, during some of which she is unconscious, and she has had a number of hemorrhages, which it is claimed come from the injuries to her back; and she further testifies that she is unable to attend to her domestic duties, and that she has been obliged to abandon entirely her dressmaking business. Testimony was also received in her behalf tending to corroborate her statements, and expert testimony was received to the effect that the pain, sinking spells, hemorrhages, and other manifestations were the natural result and consequence of the injuries, and that she will not recover from them. It is claimed on behalf of the defendant that the manifestations, so far as they can be seen by others, are attributable to

the time of life of the plaintiff, and that any pain or apparent evidence of injury except such as are natural, for the reason stated, are entirely feigned; and testimony was received, including expert testimony, to substantiate the defendant's contention.. We are of the opinion that the negligence of the defendant, the lack of contributory negligence on the part of the plaintiff, and the extent of the injuries were questions of fact fairly presented to the jury by the trial court. There is nothing in the record to justify a conclusion that the jury were actuated by prejudice, passion, or by any improper motive in finding a verdict for the plaintiff or in fixing the amount of the damages. A turnpike road is a public highway, and the same duty rests upon a turnpike company to keep its roads and bridges reasonably safe for ordinary travel that rests upon municipalities with reference to roads and bridges owned and maintained by them. The absence of a guard or railing where one is needed to make a highway reasonably safe is a defect. The trial justice left the jury to determine whether the defendant was negligent in omitting to maintain guards or railings on the side of the approach to the bridge. At the close of the charge defendant's counsel said:

"I except to that portion of the charge where you submit to the jury the question whether the maintenance of the bridge was negligent, and I ask you to charge that the manner in which it was maintained was not negligent."

The request was declined by the court.

The questions, the answers to which are controlling in this case, so far as the right to a recovery is concerned, are: (1) Was the approach to the bridge, without guards or railings thereon, a dangerous place for ordinary travel? (2) Was the accident to the plaintiff one that should have been reasonably anticipated by the defendant, or was it one that would naturally have occurred to a prudent man as likely to happen?

The trial court allowed the defendant to show that no accident had occurred on this approach to the bridge prior to the time mentioned in the complaint. This evidence was proper for the jury to consider in determining whether it was a dangerous place, and whether the accident was one that should have been reasonably anticipated. The fact that no accident had previously occurred at this particular place is not in itself a defense. Maxim v. Town of Champion, 50 Hun, 88, 4 N. Y. Supp. 515; Id., 119 N. Y. 626, 23 N. E. 1144; Wood v. Town of Gilboa, 76 Hun, 175, 27 N. Y. Supp. 586; Wood v. Railroad Co., 91 Hun, 276, 36 N. Y. Supp. 253; Quill v. Telephone Co., 13 Misc. Rep. 435, 34 N. Y. Supp. 470; Cleveland v. Steamboat Co., 125 N. Y. 299, 26 N. E. 327; Burns v. City of Yonkers, 83 Hun, 211, 31 N. Y. Supp. 757; Ivory v. Town of Deerpark, 116 N. Y. 476, 22 N. E. 1080. The turnpike was a prominent highway leading from the direction of the village of Ravena into the interior of the county, and was much used; and we do not think that this court should say, as a matter of law, that the approach to the bridge was reasonably safe, without guards or railings, or that the verdict is so entirely against the weight of evidence as to require a reversal of the judgment entered thereon.

One Powell, a physician and surgeon, was called as a witness by the defendant; and after testifying on his direct examination that he

was called to treat the plaintiff on the evening of the 15th of November, 1896, at Ravena, being the evening of the day following the accident, he stated that he made an examination of the plaintiff, and was then asked by the defendant:

"Q. Kindly describe the examination you made, in your own way."

This question was objected to by the plaintiff as incompetent; that the witness cannot state what took place at the time he was called as a physician; that the facts that he obtained in prescribing for the plaintiff are inadmissible, under section 834 of the Code of Civil Procedure. The court said:

"I think you are limited, on your claim that there was a waiver, to a denial of her testimony here in court by the testimony of the physician."

To this the defendant excepted. This was followed by many questions, of which the following are samples:

"Q. Did you make a critical examination after having her undressed, and parts exposed to view and touch? Did you make a complete critical and thorough examination of the parts that she complained of having pain in?"
"Q. Did you make an examination of the heart and lungs, and a complete and full investigation, to discover the existence of organic disease?"

To these and similar questions the same objection was made as to the previous question, and the same ruling was made by the court. The only evidence given by the plaintiff on her examination with reference to what was said and done by Dr. Powell when he was called to treat her, other than a statement that he gave her internal remedies, which she used, was brought out by the defendant on the cross-examination of the plaintiff, and is as follows:

"What did the doctor do for you then? A. He examined my back and examined me. He ordered alcohol. Q. What did he give you? A. He gave me some medicine. That is all I can tell you. Something in a glass; two or three different kinds."

The evidence sought to be obtained by the questions objected to by the plaintiff is clearly within the prohibition contained in section 834 of the Code of Civil Procedure, and, unless it was expressly waived by the plaintiff as provided by section 836 of the Code of Civil Procedure, the rulings of the trial court were right. The plaintiff, while on the witness stand, detailed her alleged injuries, and stated without reserve her feelings and all the alleged consequences of the injuries; but she did not attempt to give the conversations with Dr. Powell, or detail what, if anything, was done by him. The questions to Dr. Powell were not, therefore, asked for the purpose of contradicting anything that the plaintiff testified she had said or done in his presence, or to correct any statement made by the plaintiff as to what he had said or done in her presence. The defendant contends that, where a plaintiff testifies generally regarding her injuries and the treatment of the same, it is an express waiver of the prohibition contained in section 834 of the Code of Civil Procedure, and that thereupon all physicians who have acquired information from her necessary to enable them to act in their professional capacity with reference to the injuries can be required to give in detail what they may have seen or heard in their confidential relations with the patient, notwithstand-

ing the fact that the patient has purposely or otherwise refrained from giving any statement as to what occurred in the consultation room. When a patient voluntarily opens the door of the consultation room, and gives a view that may have been specially arranged for the purpose, it would not be in accordance with the spirit of the statute or in the interest of truth to shut the door against a view to be described by the physician; but in this case the door to the consultation room has not been opened by the plaintiff. The prohibition contained in the statute against disclosing professional information is for the purpose of allowing greater freedom between physician and patient, and a patient should not be subject to the penalty of waiving entirely the prohibition contained in section 834 of the Code of Civil Procedure if she gives to a friend, or as a witness in an action or proceeding in court, a general statement of her injuries, and the claimed consequences of the same. The plaintiff's testimony was not an express waiver in this case. It has been substantially held not to be an express waiver in the case of Hope v. Railroad Co., 40 Hun, 438, affirmed in 110 N. Y. 643, 17 N. E. 873, and in Feeney v. Railroad Co., 116 N. Y. 375, 22 N. E. 402, 5 L. R. A. 544. In the case of Rauh v. Deutscher Verein, 29 App. Div. 483, 51 N. Y. Supp. 985, the plaintiff testified in regard to an alleged accident, and as to the operations that were performed upon her at the hospital, and as to her treatment by the physicians before and after the operations; and it was held in that case that her testimony constituted an express waiver of her right to object to the testimony of the physicians to whom she referred. The decision in that case is in accordance with the views above expressed, and a careful examination of the opinions therein shows that it is not an authority, as contended by the defendant, in favor of holding that a general statement by a plaintiff as to her injuries is sufficient to constitute an express waiver, under section 836 of the Code of Civil Procedure. The case of Treanor v. Railway Co., 28 Abb. N. C. 47, 16 N. Y. Supp. 536, which is an authority in favor of defendant's contention, has been disapproved by the court of appeals. In the case of Morris v. Railway Co., 148 N. Y. 88, 42 N. E. 410, the court, in referring to the Treanor Case, says, "The one last cited certainly pushes the principle too far." The determination of the question of an express waiver depends very largely upon the extent to which the patient in her testimony has entered into the details of the consultations with her physician. We think, upon principle and authority, that the evidence of Dr. Powell was properly excluded.

Judgment and order unanimously affirmed, with costs. All concur.