MAY, RESPONDENT, v. NORTHERN PACIFIC RAILWAY
COMPANY, APPELLANT.

(No. 2,102.)

(Submitted May 4, 1905. Decided July 3, 1905.)

*Personal Injuries—Compulsory Physical Examination—Physicians and Surgeons—Witnesses—Privileged Communications—Waiver of Privilege.*

Personal Injuries—Compulsory Physical Examination—Physicians and Surgeons.
    1. In an action for personal injuries, the district court, in the absence of legislation, may not compel the plaintiff to submit to a physical examination by physicians and surgeons appointed by the court.

Witnesses—Privileged Communications—Physicians—Waiver of Privilege.
    2. Under Code of Civil Procedure, section 3163, providing that a licensed physician or surgeon, without his patient's consent, cannot be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe, where plaintiff on cross-examination admitted that a certain physician had attended and treated her for the injuries complained of, without detailing any conversation with him or telling of the character or extent of his treatment, it was proper to refuse to permit defendant to examine the physician as to plaintiff's condition at the time he attended her.

*Appeal from District Court, Ravalli County; F. C. Webster, Judge.*

ACTION by Mary May against the Northern Pacific Railway Company. From a judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Affirmed.

*Mr. Wm. Wallace* and *Mr. Charles Donnelly,* for Appellant.

The admission of the testimony of the physician is not positively forbidden by this statute. The patient may consent to its admission. The statute simply confers a privilege upon the patient, and this privilege, under all the authorities may be waived. What constitutes a waiver of it? We contend that when a plaintiff goes upon the stand as did the plaintiff in this case, and freely and voluntarily makes a disclosure of all of the facts and circumstances concerning which the physician is asked to testify, the privilege has been waived and the patient may no longer object to the introduction of the testi-

mony. (*Lane* v. *Bricourt,* 128 Ind. 420, 25 Am. St. Rep. 442, 27 N. E. 1111; *State* v. *Depoister,* 21 Nev. 107, 25 Pac. 1000; *Burgess* v. *Sims Drug Co.,* 114 Iowa, 275, 89 Am. St. Rep. 359, 86 N. W. 307, 54 L. R. A. 364; *Hunt* v. *Blackbourn,* 128 U. S. 464, 32 L. Ed. 488, 9 Sup. Ct. 125; *McKinney* v. *Grand St. Ry. Co.,* 104 N. Y. 352, 10 N. E. 544; *People* v. *Schuyler,* 12 N. E. 783, 106 N. Y. 306; *Morris* v. *New York etc. Ry. Co.,* 148 N. Y. 88, 51 Am. St. Rep. 675, 42 N. E. 410; *Marx* v. *Manhattan Ry. Co.,* 56 Hun, 575, 10 N. Y. Supp. 159; *Treanor* v. *Manhattan Ry. Co.,* 16 N. Y. Supp. 536, 21 Civ. Proc. Rep. 364; *Webb* v. *Metropolitan St. Ry. Co.,* 89 Mo. App. 604; *Highfill* v. *Missouri Pac. Ry. Co.,* 93 Mo. App. 219.)

*Mr. H. L. Myers,* and *Mr. R. A. O'Hara,* for Respondent.

It was plaintiff's privilege to exclude Dr. McGrath's evidence and she did not have to give her reasons for it. There may have been in her mind many valid reasons for so doing. Dr. McGrath had been superseded by Dr. Brethour. There may have been feeling of enmity or unpleasantness on that account. Plaintiff may have felt that Dr. McGrath was inimical to her or displeased because he had been superseded by Dr. Brethour. She may have felt that Dr. McGrath was hurried and did not examine her thoroughly. Or it may have been because Dr. McGrath was the local railroad surgeon and in the employ of the defendant. The law does not require her to give her reasons. It is enough that she objects and claims a right ripened by time and universally recognized. Most of the cases here cited involve the question of waiver by plaintiff testifying in his or her own behalf fully and producing the evidence of one or more physicians to the exclusion of others. They all hold in our favor. (*Citizens' Ry. Co.* v. *Shepherd,* 30 Ind. App. 193, 65 N. E. 765; *Munz* v. *Salt Lake City Ry. Co.,* 25 Utah, 220, 70 Pac. 852; *Green* v. *Town of Nebagamain,* 113 Wis. 508, 89 N. W. 520; *Keast* v. *Santa Ysabel Gold Min. Co.,* 136 Cal. 256, 68 Pac. 771; *Dunckle* v. *McAllister,* 70 App. Div. 273, 74 N. Y. Supp. 902; *Metropolitan*

*St. Ry. Co.* v. *Jacobi,* 112 Fed. 924; *James* v. *Kansas City,* 85 Mo. App. 20; *Finnegan* v. *Sioux City,* 112 Iowa, 232, 83 N. W. 907; *Keist* v. *Chicago etc. Ry. Co.,* 110 Iowa, 32, 81 N. W. 181; *Baxter* v. *Cedar Rapids,* 103 Iowa, 599, 72 N. W. 790; *Dotton* v. *Albion Com. Council,* 57 Mich. 575, 24 N. W. 786; *Jones* v. *Brooklyn etc. Ry. Co.,* 121 N. Y. 683, 24 N. E. 1098; *Breisenmeister* v. *Supreme Lodge,* 81 Mich. 525, 45 N. W. 977; *Cooley* v. *Foltz,* 85 Mich. 47, 48 N. W. 176; *Kling* v. *City of Kansas,* 27 Mo. App. 231; *Raymond* v. *Burlington etc. Ry. Co.,* 65 Iowa, 152, 21 N. W. 495; *Pennsylvania Co.* v. *Marion,* 123 Ind. 415, 18 Am. St. Rep. 330, 23 N. E. 973, 7 L. R. A. 687; *Heuston* v. *Simpson,* 115 Ind. 62, 7 Am. St. Rep. 409, 17 N. E. 261; *Williams* v. *Johnson,* 112 Ind. 600, 13 N. E. 872; *Feeney* v. *Long Island Ry. Co.,* 116 N. Y. 375, 22 N. E. 402, 5 L. R. A. 544.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In September, 1903, Mary May commenced this action against the Northern Pacific Railway Company to recover damages for personal injuries alleged to have been occasioned by the negligence of the agents and employees of the defendant company. The answer of defendant denies all the material allegations of the complaint. Prior to the date set for the trial of the cause the defendant company attempted, unsuccessfully, to induce the plaintiff to submit to a physical examination by surgeons selected by the company, presumably. Immediately prior to the trial the defendant made application to the court for an order compelling the plaintiff to submit to a physical examination by physicians and surgeons appointed by the court. This application was denied.

The cause having been brought on for trial, and the plaintiff having testified as to the cause of her injuries and their nature and extent, and having produced Drs. Brethour and Buchen, her attending physicians, as witnesses in her behalf, upon cross-examination admitted that one Dr. McGrath had also attended her in the early stages of her illness as her physician.

The defendant in its behalf called Dr. McGrath, and asked him to state in what condition he'found the plaintiff when he called upon her. This was objected to on the ground that it called for testimony from a physician concerning matters discovered by him while acting as physician for the plaintiff, and the giving of such testimony by Dr. McGrath would violate the confidential relation of physician and patient, contrary to the provisions of section 3163 of the Code of Civil Procedure. This objection was sustained, and exception taken. The jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon, and from an order denying defendant's motion for a new trial, it appealed.

Only two errors are assigned: (1) The order of the court denying defendant's application for an order compelling the plaintiff to submit to a physical examination, and (2) the order of the court sustaining an objection to the question asked Dr. McGrath. These will be considered in the order presented in the briefs.

1. Compulsory Physical Examination: May a district court in this state, in an action for personal injuries, compel the plaintiff to submit to a physical examination by physicians and surgeons appointed by the court? Upon this question the authorities are in hopeless conflict, and any attempt to reconcile them would be barren of results.

The first reported case in which the power of the court to compel such examination is asserted is *Walsh* v. *Sayre,* 52 How. Pr. 334, decided by the New York superior court in 1868. This was an action for damages for malpractice, and upon the analogy to cases of mayhem, divorce on the ground of impotency, and cases of controversies between a widow, claiming to be pregnant by the decedent, and other heirs of the estate, wherein such examinations had been ordered, it was held that a court of law could compel the plaintiff to submit to a physical examination.

A leading case on the subject is *Schroeder* v. *Chicago Ry. Co.,* 47 Iowa, 375, decided in 1877. Mention is not made of the

New York case cited above. The opinion states that there were no precedents at the time of its rendition. The power of the trial court to compel the plaintiff to submit to such an examination is asserted.

In 1881 the same question came before the supreme court of Ohio, in *Miami etc. Turnpike Co.* v. *Baily,* 37 Ohio St. 104, and, upon the authority of the *Schroeder Case,* the power of the trial court to make and enforce such an order is again asserted.

The next case is *Atchison etc. Ry. Co.* v. *Thul,* 29 Kan. 466, 44 Am. Rep. 659, decided in 1883, upon the authority of the *Schroeder Case* above, the court preferring to follow the Iowa court, rather than the supreme court of Missouri in *Loyd* v. *Hannibal etc. R. R. Co.,* 53 Mo. 509.

In November, 1884, in *White* v. *Milwaukee etc. Ry. Co.,* 61 Wis. 536, 50 Am. Rep. 154, 21 N. W. 524, the supreme court of Wisconsin decided the same question in the same way upon the authority of *Walsh* v. *Sayre* and the *Schroeder Case.*

In *Hatfield* v. *St. Paul etc. Ry. Co.,* 33 Minn. 130, 53 Am. Rep. 14, 22 N. W. 176, decided in 1885, the power is asserted, but by way of *dictum.*

*Richmond etc. R. R. Co.* v. *Childress,* 82 Ga. 719, 14 Am. St. Rep. 189, 9 S. E. 602, 3 L. R. A. 808, decided in 1889, is another case frequently referred to by courts holding this view. In the opening paragraph of the opinion in this case, section 206 of the Georgia Code is quoted, as follows: "Every court has power * * * to control in furtherance of justice the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter pertaining thereto." No further reference is made to this statute, but the power is asserted upon the authority of the cases herein considered above.

In November, 1885, in *Sibley* v. *Smith,* 46 Ark. 275, 55 Am. Rep. 584, the same question is decided upon the authority of *Walsh* v. *Sayre,* the *Schroeder Case,* and the *White Case;* *Shaw* v. *Van Rensselaer,* 60 How. Pr. 143; *Harrold* v. *New*

*York etc. R. R. Co.,* 21 Hun, 268, and *Bryant* v. *Stilwell,* 24
Pa. 314, are also cited.

In *Graves* v. *Battle Creek,* 95 Mich. 266, 35 Am. St. Rep.
561, 54 N. W. 757, 19 L. R. A. 641, decided in 1893, the authorities for and against the assertion of the power are reviewed
by the supreme court of Michigan, and a decision rendered in
favor of the existence of the power in the trial court.

In *Belt E. L. Co.* v. *Allen,* 102 Ky. 551, 80 Am. St. Rep.
374, 44 S. W. 89, decided in 1898, the same position is taken
by the supreme court of Kentucky.

In 1899, in the supreme court of Washington, in *Lane* v.
*Spokane etc. Ry. Co.,* 21 Wash. 119, 75 Am. St. Rep. 821, 57
Pac. 367, 46 L. R. A. 153, a like decision was made.

The last state to assert this view is North Dakota, in *Brown*
v. *Chicago etc. R. R. Co.,* 12 N. D. 61, 102 Am. St. Rep. 564,
95 N. W. 153, decided in 1903.

In 1873 the supreme court of Missouri, in *Loyd* v. *Hannibal*
*etc. R. R. Co.,* 53 Mo. 509, had before it a personal injury
case in which an application had been made to the trial court
for an order to compel the plaintiff to submit to a physical
examination. Respecting this application, the court said:
"The proposal to the court to call in two surgeons and have the
plaintiff examined during the progress of the trial as to the extent of her injuries is unknown to our practice and to the law."

In 1882, in *Parker* v. *Enslow,* 102 Ill. 272, 40 Am. Rep.
588, the supreme court of Illinois held that the trial court
could not make or enforce such an order. In 1889, in *Kern*
v. *Bridwell,* 119 Ind. 226, 12 Am. St. Rep. 409, 21 N. E. 664,
the same conclusion was reached by the supreme court of Indiana.

In 1891 the question came before the supreme court of the
United States in *Union Pac. Ry. Co.* v. *Botsford,* 141 U. S.
250, 11 Sup. Ct. 1000, 35 L. Ed. 734, and, after a careful
consideration of the authorities, it was held by a divided court
—seven to two—that the power does not reside in the federal

trial courts.    This was followed by the supreme court of Oklahoma in *City of Kingfisher* v. *Altizer,* 13 Okla. 121, 74 Pac. 107, by the court of civil appeals of Texas in *Austin etc. Ry. Co.* v. *Cluck* (Tex. Civ. App.), 73 S. W. 569, and by the supreme court of Massachusetts in *Stack* v. *New York etc. Ry. Co.* 177 Mass. 155, 83 Am. St. Rep. 269, 58 N. E. 686, 52 L. R. A. 328.

The foregoing review shows the decisions of courts upon the first presentation of this question to them.    The case of *Walsh* v. *Sayre,* was followed in *Shaw* v. *Van Rensselaer,* above; but in 1891 the question came before the court of appeals of New York in *McQuigan* v. *Delaware etc. Ry. Co.,* 129 N. Y. 50, 26 Am. St. Rep. 507, 29 N. E. 235, 14 L. R. A. 466, and *Walsh* v. *Sayre* and *Shaw* v. *Van Rensselaer* were overruled.    The *McQuigan Case* was followed in *Cole* v. *Fall Brook Coal Co.,* 159 N. Y. 59, 53 N. E. 670, decided in 1899.    The legislature of New York, however, circumvented the effect of these last decisions by enacting a statute directly conferring upon trial courts the power to make and enforce such an order.

In *Shepard* v. *Missouri Pac. Ry. Co.,* 85 Mo. 629, 55 Am. Rep. 390, decided in 1885, a view contrary to that expressed in *Loyd's Case* is intimated by the supreme court of Missouri, and in *Sidekum* v. *Wabash etc. Ry. Co.,* 93 Mo. 400, 3 Am. St. Rep. 549, 4 S. W. 701, a decision was rendered which had the effect of directly reversing the *Loyd Case;* and the *Sidekum Case* was followed in *Owens* v. *Kansas City etc. Ry. Co.,* 95 Mo. 169, 6 Am. St. Rep. 39, 8 S. W. 350.

The *Schroeder Case* was followed by the supreme court of Iowa in *Hall* v. *Manson,* 99 Iowa, 698, 68 N. W. 922, 34 L. R. A. 207; and *Railway Co.* v. *Thul* was approved and followed in *Ottawa* v. *Gilliland,* 63 Kan. 165, 65 Pac. 252, and again in *Atchison etc. Ry. Co.* v. *Palmore,* 68 Kan. 545, 75 Pac. 509, 64 L. R. A. 90.    *White* v. *Milwaukee Ry. Co.* was followed by the supreme court of Wisconsin in *O'Brien* v. *La Crosse,* 99 Wis. 421, 75 N. W. 81, 40 L. R. A. 831.    *Sibley*

v. *Smith,* above, was followed in *Railway Co.* v. *Dobbins,* 60 Ark. 481, 30 S. W. 887, 31 S. W. 147.

The supreme court of Indiana has been most uncertain in its treatment of the question.   *Kern* v. *Bridwell,* above, was decided in May, 1889; but in November of the same year, in *Hess* v. *Lowery,* 122 Ind. 225, 17 Am. St. Rep. 355, 23 N. E. 156, 7 L. R. A. 90, a contrary doctrine is announced.   In 1891, in *Pennsylvania R. R. Co.* v. *Newmeyer,* 129 Ind. 401, 28 N. E. 860, the announcement in *Hess* v. *Lowery* is pronounced *dictum,* and the authority is again distinctly denied.   But the *Newmeyer Case* is distinctly reversed in *South Bend* v. *Turner,* 156 Ind. 418, 83 Am. St. Rep. 200, 60 N. E. 271, 54 L. R. A. 396, and, so far as we are aware, the last decision from that court asserts the power.

*Belt E. L. Co.* v. *Allen* is affirmed in *Belle of Nelson Distilling Co.* v. *Riggs,* 104 Ky. 1, 45 S. W. 99, and in *Louisville etc. R. R. Co.* v. *Simpson,* 111 Ky. 754, 64 S. W. 733.

In *Wanek* v. *Winona,* 78 Minn. 98, 79 Am. St. Rep. 354, 80 N. W. 851, 46 L. R. A. 448, decided in 1899, the *dictum* in the *Hatfield Case* is declared to be the law in Minnesota.

*Parker* v. *Enslow* is followed in *Peoria etc. Ry. Co.* v. *Rice,* 144 Ill. 227, 33 N. E. 951, and in *Pittsburgh etc. Ry. Co.* v. *Story,* 104 Ill. App. 132.

In *Railway Co.* v. *Underwood,* 64 Tex. 463, and *Missouri Pac. Railway Co.* v. *Johnson,* 72 Tex. 95, 10 S. W. 325, the court, without deciding, intimated that the trial courts in Texas had the power to compel such examination; but in *Austin etc. Ry. Co.* v. *Cluck* (Tex. Civ. App.), 73 S. W. 569, decided in 1903, the question is squarely met and decided, and the authority denied.   This last case is affirmed, and the doctrine reannounced upon appeal to the supreme court of Texas, in *Austin etc. Ry. Co.* v. *Cluck* (Tex. Civ. App.), 77 S. W. 403, 64 L. R. A. 494.

The question has been before the supreme court of Nebraska, but not decided in *Sioux City etc. R. R. Co.* v. *Finlay-*

*son,* 16 Neb. 578, 49 Am. Rep. 724, 20 N. W. 860, in *Stuart* v. *Havens,* 17 Neb. 211, 22 N. W. 419; *Ellsworth* v. *Fairbury,* 41 Neb. 881, 60 N. W. 336, and *Chadron* v. *Glover,* 43 Neb. 732, 62 N. W. 62.

The syllabus to the decision in *Mills* v. *Railway Co.,* 1 Marv. (Del.) 269, 40 Atl. 1114, announces that the superior court of Delaware denies the power, but there is nothing in the body of the opinion with reference to the question.

The case of *Carrico* v. *West Virginia etc. R. R. Co.,* 39 W. Va. 86, 19 S. E. 571, 24 L. R. A. 50, is frequently cited in these opinions, but the question is not decided by the West Virginia court at all.

The federal and territorial courts have followed the decision in the *Botsford Case* in *Illinois Cent. Ry. Co.* v. *Griffin,* 80 Fed. 278, 25 C. C. A. 413, and in the *Oklahoma Case* cited.

If the last announcements of these several courts may be taken to indicate the law in their respective states, a review of the decisions discloses that the power of trial courts to compel such examination is asserted in Alabama, Arkansas, Georgia, Iowa, Indiana, Kansas, Kentucky, Michigan, Minnesota, Missouri, North Dakota, Washington, and Wisconsin, and denied in the federal courts, and in Illinois, Massachusetts and Texas, and was denied in New York until specifically granted by direct legislative enactment.

The bare assertion that trial courts possess this power, in the absence of any legislation, and without common-law precedents, has led to the greatest possible confusion among the decisions of the very courts asserting it. (1) What is the source of the power? (2) To what extent may it be carried? (3) May the defendant demand the order as a matter of right? And (4) how will the court enforce obedience to its order? Singularly enough, the first of these questions appears to have received little or no consideration.

1. In *Railroad Co.* v. *Childress,* the section of the Georgia Code above is quoted; but further reference is not made to this

provision of the law, and it can hardly be presumed that the decision proceeds upon the assumption that the source of the power is the statute quoted. That section is similar in its provisions to subdivision 5 of section 110 of our Code of Civil Procedure. But that section adds nothing to the powers already possessed by courts of general jurisdiction, for it is merely declaratory of the common law. In some of the opinions it is said that the power is one inherent in the trial courts. In *Graves* v. *Battle Creek,* decided in 1893, it is said, "It is true that the rule is one of modern growth." Most of the courts content themselves with the bare assertion of the power, without any discussion of its origin.

2. If the plaintiff may be compelled to submit to a physical examination, is the authority to order it an absolute or only a qualified one? May the plaintiff be compelled to submit to the administration to him of anesthetics or drugs by which he loses consciousness altogether, or, if the injury is an internal one, may he be compelled to submit to the use of such surgical instruments as the physicians appointed to make the examination may see fit to use? May he be compelled to exhibit his injury to the jury in open court, and, if the plaintiff be a woman, is there any protection whatever against violence to her feelings?

By some of these courts it has been held that anesthetics and drugs should not be used (*Schroeder* v. *Chicago etc. Ry. Co.,* 47 Iowa, 375; *Strudgeon* v. *Sand Beach,* 107 Mich. 496, 65 N. W. 616), and that plaintiff should not be compelled to submit to the use of surgical instruments (*O'Brien* v. *La Crosse*); but in *Railway Co.* v. *Palmore* it was held that the plaintiff could be compelled to submit to the examination, and to an injection of a drug into his injured eye to dilate the pupil; and in *Hall* v. *Manson* it was held that the plaintiff, a woman, could be compelled to remove her shoe and stocking, that an examination might be had and measurements taken of her injured ankle in the presence of the jury.

In *Alabama etc. Ry. Co.* v. *Hill,* above, the supreme court of Alabama said: "When it becomes a question of possible violence to the refined and delicate feelings of the plaintiff on the one hand, and possible injustice on the other, the law cannot hesitate.    Justice must be done."    This is quoted with approval in *Lane* v. *Railway Co.*    However, in *Graves* v. *Battle Creek* it is said: "The decisions are not uniform upon this question, but the very great weight of authority is in favor of the exercise of such power by the court under proper restrictions; the rule recognizing, however, that a wide discretion is vested in the trial court, which justifies a refusal to require the examination    * * *    where the sense of delicacy of the plaintiff may be offended by the exhibition."    To the same effect is the decision in *Ottawa* v. *Gilliland,* above.

3.    In *Sibley* v. *Smith* and in *Railway Co.* v. *Thul* it is held that the defendant may demand the order as a matter of right, but that in granting it the court may exercise its discretion. We are unable to understand this contradiction of terms, and observe that in most of the cases it is held that the application is one addressed to the sound discretion of the trial court, subject to review for manifest abuse only.

4.    In the *Schroeder Case* and in *Sibley* v. *Smith* it is said that refusal of the plaintiff to comply with the order would constitute contempt of court, and subject the plaintiff to the punishment of a recusant witness; while in *Turnpike* v. *Baily, Lane* v. *Railroad Co., Wanek* v. *Winona, Brown* v. *Railroad Co.,* and in the dissenting opinion in the *Botsford Case,* it is said that it is not a question of contempt; that the court cannot compel the plaintiff to comply with the order which it has made, but, if he refuses, the court may dismiss his action or refuse to permit him to testify.

From the assertion of the power arising from the apparent necessities of extraordinary cases, as disclosed by the decision in the *Schroeder Case,* we observe the almost limitless extent to which the power has been carried; and, not content with ap-

plying the rule to civil actions for personal injuries, it has been extended to apply to the prosecuting witness in a criminal case (*King* v. *State,* 100 Ala. 85, 14 South. 878), and, for the same reasons advanced for the exercise of the power in civil actions by the courts asserting its existence, the doctrine has been applied to a criminal case, and the defendant compelled to bare to the view of the jury part of the unexposed portions of his body upon which were certain tattoo marks, in order to enable the state to complete the case against him, with the result that the defendant was convicted of a capital offense. (*State* v. *Ah Chuey,* 14 Nev. 79, 33 Am. Rep. 530.)

With this review of the decisions, we pass to a direct consideration of the question as it relates to the trial courts of this state. Our district courts are courts of general jurisdiction created by the Constitution (Article VIII, section 1), their jurisdiction specifically defined by that instrument (Article VIII, section 11), and their powers and authority derived from the Constitution and laws of the state. The laws embrace the statutes and the common law, so far as it has not been supplanted by the statute or is not inconsistent with our conditions. In considering, then, the question of the possible source of such a power as the one asked to be asserted, we search the Constitution and laws for a grant of the power, rather than for limitations upon the power, as appears to be intimated as the doctrine in *Brown* v. *Railroad Co.,* above; and unless the authority is granted by the Constitution or statutes, by express terms or by necessary implication, or unless the authority existed at common law, we say without hesitation that it cannot be exercised; for there is no such thing in this state as the inherent power of a court, if by that is meant a power not authorized by law.

The only instances in which such power was invoked at common law were in actions for divorce upon the ground of impotency, appeals of mayhem, cases of atrocious battery, cases of conviction of a woman of a capital crime who is alleged to be pregnant, and controversies between heirs and a widow claiming to be pregnant by the deceased. No one of these

rules has ever obtained in this country, unless it has been in cases of divorce on the ground of impotency. The power was exercised by the English ecclesiastical courts, and was a graft from the civil law. In Montana the authority to grant divorces is lodged in our district courts, sitting as courts of equity, and to admit that these courts may exercise the same powers as their English prototypes or the ecclesiastical courts, a part of whose powers they have fallen heir to, argues nothing here. Neither does the fact that here the same court administers law and equity, for, while our courts of equity follow the practice of the English chancery courts in so far as the statutes have not ordained otherwise and the English practice is adapted to our conditions, our law courts are confined strictly to the authority given by the Constitution and statutes and the rules applicable to law courts at common law. A power exercised by a court of equity is not a precedent for the exercise of the same power by a court of law.

It is true that in a few instances the English law courts attempted to compel discovery, but these have been denominated mere usurpations of authority, and in later instances those same courts denied the authority in similar cases, and refused to countenance its exercise (*Newham* v. *Tate,* 1 Arnold, 224; *Turquand* v. *Strand Union,* 8 Dowl. 201), and, for the purpose of enabling them to do that which they had attempted to do without authority as above indicated, the statutes of 14 & 15 Victoria, chapter 99, and 17 & 18 Victoria, chapter 125, were enacted.

It would seem that the paucity of common-law precedents affords the very best evidence that the power was not exercised by English law courts, for the English people have never tamely submitted to any curtailments of their personal privileges or their personal liberty. The very fact that at common law the plaintiff in an action of this character could not testify—was not a competent witness—lends further support to the contention that the power was not asserted.

No one would seriously contend that, in the absence of statutes, our law courts could compel the inspection of books and papers, or an examination of property, out of court; indeed, in order to clothe them with some, at least, of the powers possessed by courts of equity, sections 1314, 1317 and 1810 of the Code of Civil Procedure were enacted, as was likewise section 2097 of the Penal Code for obvious reasons, and what we have accomplished by the enactment of these statutes other states have acomplished, not by the arbitrary pronouncements of courts, but by direct legislation. Added force is given to our views by the fact that the legislature which enacted these sections above into our law refrained from granting the power invoked in this case.

The reasons advanced by the courts for the exercise of this power, in the absence of any direct authority, do not commend themselves to us. It is said by some that the power is analogous to the proceeding for discovery; but discovery was not compelled by the law courts at common law, and the best evidence of this is found in the fact that equity interposed in this behalf to prevent failure of justice. If the law courts had possessed and had exercised the power, there would have been no excuse for equity calling into existence the bill of discovery.

By other courts it is said that the assertion of this power is necessary to prevent the plaintiff from malingering and bolstering up a fictitious case "by the very unreliable speculations of so-called medical experts." (*Wanek* v. *Winona, supra.*) It is a curious process of reasoning which enables a court to characterize the solemn testimony of medical men as unreliable speculations when the witnesses are called by the plaintiff, but if these same physicians be called by the .court, upon application of defendant, they immediately become the instrumentalities through which, not approximate, but exact, justice is to be done. Others, including the dissenting opinion in the *Botsford Case,* say it is strange that the plaintiff may, if he chooses, exhibit his injury to the jury, or may testify concerning it, or may have other witnesses do so, but he cannot be compelled to make such exhibition.

We are of the opinion that even if the plaintiff might, as a matter of right, exhibit his injuries to the jury, it would not add to the argument in behalf of that view of the case.  In this state, however, he does not possess that right.  He may offer to do so, but it is within the discretion of the court to permit or refuse the offer, subject, of course, to review for a manifest abuse of that discretion.  (Code of Civil Proc., sec. 3250.)

The right to the inviolability of one's person is merely a privilege which plaintiff may waive, as a defendant may the constitutional guaranty that in a criminal case he cannot be compelled to be a witness against himself.  The defendant cannot be compelled to be a witness against himself in such a case, but he may become such if he chooses; and, if he takes the witness-stand in his own behalf, he so far waives the constitutional guaranty that he may be compelled to answer all proper questions on cross-examination, even though the answers may tend to incriminate him.  And as a defendant may give evidence against himself, but cannot be compelled to do so unless he waives the privilege, so the plaintiff may exhibit portions of the clothed parts of his body to the jury, if the court permits, but cannot be compelled to do so.  The constitutional guaranty is not more solemn and binding in one instance than in the other.  And, for the much stronger reason, plaintiff cannot be compelled to make such exhibition of himself to third parties, strangers to the case, in order that they may procure material for testimony.

Furthermore, our Code (Part IV, Code of Civil Proc.) assumes to promulgate the general principles and rules of evidence which are in force in this state, and sets forth specifically the means of its production; and the same Code declares that "the Code establishes the law of this state respecting the subjects to which it relates."  (Section 3453.)  This portion of the Code assumes to define judicial evidence (section 3100), distinguishes the kinds (section 3104), and provides for the means by which legal evidence may be produced.  (Sections

3300-3312.)   These provisions are ample to secure the attendance of a witness upon a court, and the production for use in evidence of any books, documents, or other things which the witness may by law be bound to produce; and sections 1314, 1317 and 1810, above, make provision for the examination of books, papers and other property out of court.   But, with these direct exceptions, there is no authority for compelling one litigant to furnish the means by which the other may procure evidence.   The plaintiff may be compelled to go upon the witness-stand and answer all proper questions put to him, or to produce books and papers in his control, or permit the examination of property in his possession, and, so far as the defendant may reap any benefit therefrom, it may be said that the plaintiff is compelled to furnish evidence for his adversary; but further than this there is no warrant in the law for our courts proceeding.

From the authority directly conferred upon the district courts of this state, there cannot be implied this extraordinary power.   There is no grant of power from which it could be implied.   However, the assertion of the power by certain courts is no more extraordinary than the remedy proposed for violation of the order.   To say that a court can make an order but cannot enforce it, is remarkable, to say the least.   To say that a court may refuse to permit a witness to testify, or dismiss his action if he refuse to comply with the order, is a doctrine which we cannot approve.   Except in particular instances where the authority is directly conferred (and the present case does not present one of them), our courts have no authority to refuse to permit the plaintiff to testify or to dismiss his action.   For a trial court of this state to make an order of this character and prescribe dismissal of the action as a penalty for noncompliance, would amount to a clear usurpation of authority in each instance.   The order would be made without authority, and, in case of disobedience, the penalty inflicted without sanction of the law.

The arguments advanced in favor of the assertion of this power might with propriety be addressed to a legislative assembly, but not to the courts, and we decline to resolve this court into a law-making body, even though it may be considered by text-writers more *enlightened* to do so.   We prefer to follow the doctrine announced by the supreme court of Massachusetts—that it is a matter for legislative control, and, in the absence of legislation, the courts ought not to usurp the authority.

2. Privileged communications: The appellant insists that Dr. McGrath should have been permitted to testify as to the condition of the plaintiff at the time he attended her as her physician.   Section 3163 of the Code of Civil Procedure, among other things, provides: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * * * (4) A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."   Most of the states in the Union, if not all, have similar statutory provisions.

It is to be observed that the plaintiff upon her direct examination merely described her injury, and told of her treatment by Drs. Brethour and Buchen.   Upon cross-examination she admitted that Dr. McGrath had also attended her as her physician, and had treated her for the injury complained of; but she did not assume to detail any conversation had with Dr. McGrath, or to tell of the character or extent of the treatment which he gave her.   Of course, if the patient calls the physician as a witness to testify, he thereby expressly consents to the proceeding, or, if he sits by and fails to object, he tacitly consents that the physician may testify.

Furthermore, it has been held that where the patient directly attacks the physician, as by an action for damages for malpractice, he abandons the protection given by the statute,

for he thereby challenges the physician to disprove the patient's contention as to the character of his injury or of the physician's treatment. (*Lane* v. *Boicourt,* 128 Ind. 420, 25 Am. St. Rep. 442, 27 N. E. 1111.)   It has also been held that where two or more physicians are employed at the same time, with respect to information gained at the same consultation, calling one of the physicians as a witness by the patient, constitutes a waiver of the statutory prohibition as to the other or others (*Morris* v. *New York etc. Ry. Co.,* 148 N. Y. 88, 51 Am. St. Rep. 675, 42 N. E. 410), although this doctrine is disputed by respectable authority (*Baxter* v. *Cedar Rapids,* 103 Iowa, 599, 72 N. W. 790).

Likewise it has been held that, where the patient calls the physician as a witness at one trial, this constitutes a waiver of the privilege as to that physician upon a second trial of the same case. (*McKinney* v. *Grand Street R. R. Co.,* 104 N. Y. 352, 10 N. E. 544.)   But this doctrine has also been disputed in *Burgess* v. *Sims Drug Co.,* 114 Iowa, 275, 89 Am. St. Rep. 359, 86 N. W. 307, 54 L. R. A. 364, and *Grattan* v. *Metropolitan Life Ins. Co.,* 92 N. Y. 274, 44 Am. Rep. 372.   But so far as our investigation discloses, no court of last resort has ever held that the mere fact that the patient testifies generally concerning his condition constitutes a waiver of the privilege granted by the statute.

In *Marx* v. *Manhattan Ry. Co.,* 56 Hun, 575, 10 N. Y. Supp. 159, the supreme court of New York held that, where the patient assumes to tell all that took place between himself and the physician, this constitutes a waiver of the privilege; and in *Treanor* v. *Manhattan Ry. Co.,* 21 Civ. Proc. 364, 16 N. Y. Supp. 536, decided by the common pleas court of New York City, it was also held that, where the patient testifies without reservation as to his injuries and their effect upon him, this likewise constitutes a waiver of the privilege.   But these cases were later disapproved, and in effect directly overruled, by the supreme court of New York in *Fox* v. *Turnpike Co.,* 59 App. Div. 363, 69 N. Y. Supp. 551, and *Dunckle* v. *Mc-*

*Allister,* 70 App. Div. 273, 74 N. Y. Supp. 902, and by the court of appeals of New York in *Morris* v. *New York etc. Ry. Co.,* above.

In *Highfill* v. *Missouri Pac. Co.,* 93 Mo. App. 219, it is said that, where a patient goes on the stand and testifies as to what his physician found and said, he thereby waives the privilege under the statute. It may be safely said that the Missouri appellate court is now the only court asserting the doctrine announced by it, and even that case can hardly be a precedent in favor of the contention of appellant here, for this plaintiff did not assume to tell what Dr. McGrath had done for her, or to detail any conversations with him, and her statement that he had been her physician was not a voluntary one, but was brought out on cross-examination.

It is not the inherent incompetency of the evidence that precludes it being given, but it is the fact that the evidence comes from a person who occupies a certain relation of confidence to the patient, by virtue of which the statute says he shall not disclose his information without the consent of the person from whom he gained it. So far as we are aware, the authorities are uniform in holding against this contention of appellant. (*Williams* v. *Johnson,* 112 Ind. 273, 13 N. E. 872; *Citizens' Street Ry. Co.* v. *Shepherd,* 30 Ind. App. 193, 65 N. E. 765; *Warsaw* v. *Fisher,* 24 Ind. App. 46, 55 N. E. 42; *Green* v. *Nebagamain,* 113 Wis. 508, 89 N. W. 520; *McConnell* v. *City of Osage,* 80 Iowa, 293, 45 N. W. 550, 8 L. R. A. 778; *Baxter* v. *Cedar Rapids,* 103 Iowa, 599, 72 N. W. 790; *Burgess* v. *Sims Drug Co.,* 114 Iowa, 275, 89 Am. St. Rep. 359, 86 N. W. 307, 54 L. R. A. 364; *Butler* v. *Manhattan Ry. Co.,* 30 Abb. N. C. 78, 23 N. Y. Supp. 163, affirmed in 143 N. Y. 630, 37 N. E. 826; *Mellor* v. *Missouri Pac. Ry. Co.,* 105 Mo. 455, 16 S. W. 849, 10 L. R. A. 36.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.