WOODS, Circuit Judge,
after making the foregoing statement, delivered the opinion of the court.
The primary question, upon which all other questions of importance in this case turn, is whether the railroad company was under any duty to the defendant in error to make the baggage room a safe place. The contention of the plaintiff in error is that while railway waiting rooms, platforms, and the approaches thereto, are places to which the public having business with the railway company are invited, a baggage room is necessarily a private place, where the one who goes without invitation, express or implied, is a trespasser, or at best a mere licensee, to whom no duty is owing, and that in this case, there being no pretense of an express invitation to the plaintiff to enter the room, there was no implied invitation, because she entered solely for her own convenience; the proper place for receiving her baggage being at the door or on the platform outside, and her presence inside being in no sense to the advantage of the company. We do not agree that a baggage room at a railway station, when open for the reception and delivery of baggage, is a private room, as against owners of baggage who are permitted to enter. In its relation to the public, the company is represented by the baggage master or other employé whom it puts in charge of the room; and, if an owner of baggage enters upon the invitation or by permission of the baggage master, it is the invitation or permission of the company; and whether, in a given instance, one who goes in by permission does it only for his own benefit, or for the advantage of both parties, must ordinarily be a question for the jury. If thereby the baggage master is aided in the performance of his duties or labors, the company which he represents is benefited. In this case the baggage master was told before he opened the door that a part of three pieces of baggage was wanted, and it was certainly to his convenience that the part or piece desired should be pointed out without his being required to bring the three pieces to the door or platform; and when he passed in, leaving the door open and giving no admonition to Miss Griffin to stay out, it was, to say the very least, a question for the jury whether she was not invited to *281 go in. In Bennett v. Railroad Co., 102 U. S. 577, 584, the court quotes with approval the following proposition 'from Campbell on Negligence:
“The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.”
The evidence in that respect being sufficient to support the verdict, it must be assumed, for the present purpose, that the entrance of the defendant in error into the baggage room was at the invitation and for the benefit of the railroad company, as well as for her own convenience; and, that conceded, the evidence which tended to establish negligence on the part of the defendant, and freedom from fault on the part of the plaintiff, was such as to forbid the withdrawal of the case from the jury.
Other questions merit only a brief statement. The record shows no exception to the remarks of the court in the presence of the jury upon the presentation and consideration of the motion for a peremptory instruction in favor of the defendant; but we are of opinion that, if excepted to, the remarks were not such as to justify a reversal of the judgment. The better practice would be to send the jury out of the room when such motions are to be made, argued, or decided. It does not appear that the plaintiff in error moved or requested that the jury be directed to retire.
It was in the discretion of the court to permit the plaintiff to be further interrogated as a witness after the motion for a verdict had been decided, and it does not appear that there was an abuse of discretion for which the judgment should be reversed.
The testimony which the plaintiff was allowed to give of the manner in which different parts of her body were affected was not outside of the issue, nor otherwise improper. The declaration charges nervous prostration, and sensations of numbness and pain in the back of the neck, in the left side, and in the arm “and other parts of her body”; and even if the averment were less broad it would not follow that her statements touching the condition of her uterus and the nerves of her leg would not have been competent. The sympathy of one part of the body with another is involved in a scientific determination of the effects of injuries; and, on such an inquiry, whatever in the light of science is significant, in the eye of the law is competent.
There was no error in permitting a physician to answer the question:
“Have you seen sufficient of the plaintiff here, since the trial commenced, to-be able to state, as a physician, whether there is or is not an abnormal nervous condition present in her case.”
If, as suggested, the question contains phrases of doubtful meaning, it was the part of a cross-examination to clear the doubts away.
It is objected to certain hypothetical questions that they were-based in part upon asserted physical conditions claimed to have-been discovered at an examination of the plaintiff made pending, and late in the progress of, the trial, which conditions were not. *282 «barged in the complaint, and therefore were not pertinent to the issue, and in part upon the fact that, two months before the injury-in the baggage room, the plaintiff “took part” in a railroad collision, as a result of which she suffered insomnia, headache, nervousness, and other hard-worded disorders and irregularities, like those ■charged in the complaint; and it is contended that if these were other and different from the conditions which the witness discovered at the physical examination, so, also, the conditions described an the complaint were different, and the allegations and proofs do not correspond. These objections are not tenable. When the proof shows causes, outside of those alleged, for the symptoms of .suffering, it is proper and necessary that the jury shall be informed, if possible, to what cause the suffering is justly attributable, and to that end it is necessary that the hypothetical questions cover the ■entire field of inquiry.
The court did not err in refusing to authorize and compel a physical examination of the plaintiff by physicians to be designated by the court. Railway Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000. 'The reasoning of that case forbids a compulsory examination during the trial equally with one in advance of the trial.
Error cannot be assigned upon questions put to a witness, when it does not appear what answers were elicited. Unless the answer is objectionable, it does not matter, ordinarily, what was the question. The exception should therefore go to the answer, and not to the question alone.
The alleged' inconsistencies between instructions given at the request of the plaintiff in error and the charge of the court to the jury do not go to material questions, and if they did there would 'be no available error, if the court’s charge was right. If the court, of its own motion, gives inconsistent charges, there may be an assignment of error upon the one which is wrong, or perhaps on the fact of inconsistency; but, where the inconsistency is between a -proper charge and an erroneous instruction given upon request, the requesting party may not complain. The charge here complained •of is in harmony with the views which we have expressed upon the •motion for a verdict, while the special instructions refused are inconsistent with those views. A further statement of them is therefore unnecessary. The judgment below is affirmed.