### DE HAVEN v. HENNESSEY BROS. & EVANS CO.

(Circuit Court of Appeals, Sixth Circuit. April 29, 1905.)

No. 1,355.

1. MASTER AND SERVANT—MASTER'S LIABILITY FOR INJURY TO THIRD PERSON—ASSUMPTION OF RISK.

A person visiting a public building in course of construction, by invitation of the contractor or its superintendent in charge of the work, where such invitations were frequently given to him, and to other citizens, was not a trespasser because of a notice posted outside the building warning the general public to keep out, and while he assumed the risk of injury from apparent dangers resulting from existing conditions he did not assume the additional risk due to negligence of the licensor or its servants, and especially of a servant known to the contractor to be dangerously careless.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1226.]

2. SAME—ACTION FOR DAMAGES—QUESTIONS FOR JURY.

Defendant was a contractor engaged in the construction of a courthouse, the work being in charge of a superintendent. On several occasions plaintiff, as well as other citizens, had visited the building by invitation of the superintendent, and in his company, and sometimes also

in company of a subordinate, who, as the evidence tended to show, had charge of the work in his absence, had gone over the building, using at times an elevator or hoist, used to carry both men and materials to the several floors and into the tower. On one occasion, the superintendent being absent, plaintiff, by invitation of the assistant, went with him into the tower, and was injured by the falling of the elevator, which the latter called to take them down. The accident was caused by the gross negligence of the man in charge of the hoisting engine in failing to put on the clutch which held the elevator in position, the result being that it dropped at once when the two men stepped upon it. He was known to be careless, and had once been discharged for that reason. *Held,* that whether the assistant was in fact such and acting as vice principal within the scope of his authority was a question for the jury, as was also the question of defendant's liability for the injury, under all the facts shown.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Darlington & Darlington (Howard & Howard, of counsel), for plaintiff in error.

Worthington & Strong and Horace L. Smith, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action to recover damages for personal injuries caused by the accidental fall of an elevator or hoist in use in a courthouse in course of construction at Xenia, Ohio. The defendant company was the contractor; the plaintiff a physician who, upon the invitation of the superintendent of construction, was visiting the building to observe the progress of the work. The negligence charged was that of the engineer who was operating the elevator. At the conclusion of the plaintiff's testimony the court directed a verdict for the defendant.

The testimony tended to prove the following facts: The work of construction was in charge of one Frazier as superintendent. Under Frazier was one Schlee, who was timekeeper, paid the men off, and, in the absence of Frazier, had charge of the building and work. The courthouse was a three-story stone structure, with a tower extending several stories higher, in which was a dial window for a clock. An elevator or builder's hoist, operated by an engine on the outside of the tower, ran up through the building into the tower. It was operated by a young man named Griesbaum, whose father owned the hoisting machine. Griesbaum was so careless that prior to the accident Frazier turned him off, but had to take him back because he could not get the use of the machine without employing the boy, the father making that a condition. The hoisting machine had a double drum. One end of the cable was attached to the drum and the other to the cage. There was a cogwheel with a clutch, which, when placed between the cogs, would hold the cage firmly in position. The cage could also be held by "jamming down the lever," but not safely so, especially if a load were placed upon it. The testimony was undisputed that it was the duty of the

engineer to lock the cogwheel and drum by means of the clutch before leaving the engine, when the elevator was in use.

The plaintiff, Dr. De Haven, was a physician. He was well acquainted with Frazier; had treated his family professionally. Frazier frequently invited him to visit the building and see how they were getting on. He had visited the building several times before the accident, and had been with Frazier and Schlee on the elevator. On the day of the accident he went to the building with one Galloway, a druggist. Frazier was not there, and Schlee was in charge. While on the third or attic floor, Schlee came down from the tower and invited them to go up there for a view. Galloway declined, but the plaintiff followed Schlee up a ladder to the floor containing the opening for the clock dial. After remaining there three or four minutes and enjoying the view, Schlee signaled for the elevator. As it was coming up, the plaintiff asked Schlee, "Are you going down on the elevator?" He answered, "Yes," and the plaintiff said to him, in substance, "Well, the elevator looks about as safe as the ladder." Schlee replied, "The elevator is all right." When the elevator reached the level of the floor Schlee asked the plaintiff to get on; and the two stepped on. The elevator dropped like a stone to the basement, injuring the plaintiff. The fall was due to the fact that Griesbaum, after sending the elevator up upon Schlee's signal, left the engine to get some coal, without putting the clutch in the cogwheel. While putting the coal on, Griesbaum heard the elevator falling, and tried to stop it, but it was too late.

The court below directed a verdict for the defendant upon the ground that the plaintiff in visiting the building was a bare licensee, and assumed all risks except that resulting from the intentional, willful, or wanton acts of the defendant, and none such was shown; that Schlee was not a vice principal at the time of the accident, but a mere timekeeper, and in inviting the plaintiff to use the elevator was acting outside the scope of his employment; and, finally, that the accident was due to the negligence of Schlee in not signaling the engineer that he desired to descend, in which negligence the plaintiff participated, and therefore contributed to his own injury.

We are unable to follow the court in its view of either the facts or the law. Whether on that day Schlee was a vice principal, in charge of the building and of the work, was a question which should have been left to the jury. One of the county commissioners testified that Frazier told him that if they wanted anything during his absence to go to Schlee, which they did, while Griesbaum stated that he thought Schlee was "assistant superintendent," and when Frazier was absent Schlee had charge and "bossed" the men.

The same thing is true as to the cause of the accident. The court below says it was due to the negligence of Schlee in not signaling the engineer that he desired to descend. The record does not support this statement. Schlee signaled Griesbaum to send the elevator up. Griesbaum knew to what floor, for he sent it there. He knew Schlee was there, for he says so; and he knew, inferentially, that the elevator was sent up to receive a load. Schlee could not

have properly given the signal to descend until the load (whether men or material) was put on. In the meantime, it was the plain duty of Griesbaum, when the elevator reached the floor, to put the clutch in the cog-wheel, so as to hold the cage firmly until the load was on. He grossly violated his duty in sending the elevator up for a load, and then leaving the engine without putting the clutch in.

There were posted on the outside of the building notices signed by the contractor reading "No Admittance Except on Business." The court excluded testimony offered for the purpose of showing that many citizens had been invited by the superintendent to visit the building prior to the accident, and in the face of this, and the plaintiff's testimony that he had frequently been in the building on Frazier's invitation, declared it was the policy of the defendant to exclude persons from the building, and that therefore Schlee was acting without authority in showing the plaintiff over the building. The broad inference drawn from the posted notices was negatived by the invitations. It might be to the interest of a contractor engaged in putting up a public building to invite certain citizens to visit the building and observe the progress of the work, notwithstanding the necessary exclusion of the general public. Every citizen has an interest in a public building, and if invited to visit it is not to be treated as a trespasser.

The invitation, repeatedly given the plaintiff, "to come over and see how we are getting on," was one to visit any part of the building, including the tower, especially when supplemented by Schlee's suggestion, and it did not matter whether he followed Schlee into the tower to inspect the work or enjoy the view. Towers are built to look out of as well as to look at.

The plaintiff found Schlee apparently in charge, and Schlee suggested the trip to the tower and led the way. After showing the tower, Schlee ordered the elevator up for the purpose of taking them down. The plaintiff did not suggest the sending up of the elevator. His question, "Are you going down in the elevator?" was the equivalent of "Are we going down in the elevator?" or "Do you expect me to go down in the elevator?" And, getting an affirmative answer, he accordingly discussed the safety of the elevator. It all amounted to an invitation from Schlee to the plaintiff to use the elevator.

The court below took the view that Schlee had no authority to show the plaintiff the tower and invite him to use the elevator. But if Frazier was acting in the line of his employment in inviting the plaintiff to visit the building, Schlee was in the line of his employment when, in Frazier's absence and acting in Frazier's behalf, he did only what Frazier might have done. The elevator was used not only to carry material, but men, from floor to floor, and the plaintiff on a former visit had ridden in it along with both Schlee and Frazier. Schlee, therefore, had reason to believe that he was within his authority in doing what he had seen Frazier do, and the plaintiff certainly had no reason to believe that he was exceeding it.

The risks the plaintiff took when he followed Schlee up the ladder, and later stepped into the elevator to come down, were only

those resulting from things as they were. In mounting the ladder he took the risk of getting dizzy and falling, and when he stepped on the elevator he took that resulting from the fact it was not a passenger elevator. He was obliged to guard himself, and if he had been hurt in an ordinary descent he would have had no recourse. But in assuming these apparent risks he did not assume a hidden risk known only to the defendant—the risk of the negligence of a grossly incompetent employé entrusted with the operation of the elevator. The assumed risk of the dangers resulting from existing conditions does not include an added risk due to the negligence of the licensor or his servants. Gallagher v. Humphrey, 2 Smith's Cases on Torts, 288, and 6 Law Times Reports, N. S., 684; Bennett v. R. R. Co., 102 U. S. 577, 26 L. Ed. 235; Felton v. Aubrey, 74 Fed. 350, 359, 20 C. C. A. 436; Ellsworth v. Metheney, 104 Fed. 119, 122, 44 C. C. A. 484, 51 L. R. A. 389; Corrigan v. Union Sugar Refinery, 98 Mass. 577, 96 Am. Dec. 685; Pomponio, Adm'r, v. N. Y., N. H. & H. R. R. Co., 66 Conn. 528, 539, 34 Atl. 491, 32 L. R. A. 530, 50 Am. St. Rep. 124.

The cause of the accident in this case was not only the active negligence of the defendant's servant, but of a servant known to the master to be dangerously careless. This negligence consisted in sending an elevator into the tower for a load, and negligently leaving it without locking the drum by putting the clutch in the cogwheel. This was the setting of a trap for the plaintiff in the strictest sense. It was impossible for him to anticipate what followed his stepping on the elevator. The pitfall was beyond his prevision. He could not fairly be said to assume a risk he could not possibly foresee.

The case should have been submitted to the jury. The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.