# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS THE DISTRICT COURTS, AND THE COMMERCE COURT

---

## MURCH BROS. CONST. CO. v. JOHNSON.

### (Circuit Court of Appeals, Sixth Circuit. March 4, 1913.)

### No. 2,239.

**1. TRIAL (§ 177\*)—QUESTIONS OF LAW OR FACT—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.**

A motion by both parties for a directed verdict constitutes a stipulation that there are no issues of fact for the jury and authorizes the court to determine both issues of fact and law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.\*

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to Love v. Scatcherd, 77 C. C. A. 8.]

**2. APPEAL AND ERROR (§ 927\*)—REVIEW—INFERENCES.**

Where both parties moved for a directed verdict, and the court directed a verdict for plaintiff, the Court of Appeals, on a writ of error, would adopt that view of the facts expressly proved or reasonably inferable which was most favorable to the plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.\*]

**3. MASTER AND SERVANT (§ 316\*)—INJURIES TO SERVANT—INDEPENDENT CONTRACTOR.**

The doctrine of independent contractor is that one who lets work to be done by another according to the methods of the latter, and without being subject to the employer's control except as to the result of the work, is not liable to third persons for injury resulting from the negligence of the contractor or his servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242, 1243; Dec. Dig. § 316.\*

Who are independent contractors, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

**4. MASTER AND SERVANT (§ 318\*)—SERVANT OF SUBCONTRACTOR—LIABILITY OF PRINCIPAL CONTRACTOR.**

Where defendant principal contractor for the construction of a building controlled the work as it progressed through a superintendent, and permitted a subcontractor to pile marble in one of the uncompleted rooms in such a manner as to be dangerous to employés of subcontractors, who were in the habit of eating their lunches in the room, he was not relieved

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

203 F.—1

from liability for injury to one of such servants while in the room during the lunch hour because the danger was caused by the negligence of the servants of the subcontractor in improperly piling the marble.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1257, 1258; Dec. Dig. § 318.*]

5. MASTER AND SERVANT (§ 318*)—INDEPENDENT CONTRACTOR—CARE REQUIRED.
Defendant general contractor, through a superintendent, retained general control of the construction of a building while different parts of the work were being performed by subcontractors. The subcontractor for the marble work was permitted to store marble in a room where the employés generally ate their lunches, and so negligently piled certain of the marble that, as an employé from a different building not connected with defendant was walking through the room during the lunch hour, he so jarred a pile of marble that it fell on plaintiff, a servant of another subcontractor, and injured him. Held, that plaintiff was a licensee, and that defendant, having intrusted the subcontractor with the performance of its duty to see that the marble was safely stacked for the protection of the persons working in the building, was responsible for the discharge thereof, and that defendant was negligent in failing to see that the marble was properly stacked, or that the workmen were warned.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1257, 1258; Dec. Dig. § 318.*]

6. MASTER AND SERVANT (§ 322*)—DANGEROUS PREMISES—CAUSE OF INJURY.
The admission of strangers into the building not having been forbidden, and visitations by workmen from another building having been frequent and with defendant's knowledge, it was not relieved from liability because the fall of the slab that caused plaintiff's injury resulted from the act of such servant in walking along the plankway in the building in which plaintiff was employed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1263; Dec. Dig. § 322.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Andrew Johnson against the Murch Bros. Construction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Metcalf & Metcalf, of Memphis, Tenn., for plaintiff in error.
F. S. Elgin, of Memphis, Tenn., for defendant in error.

Before KNAPPEN, Circuit Judge, and SATER and SESSIONS, District Judges.

SATER, District Judge. [1, 2] The plaintiff in error (hereinafter called the defendant) seeks a reversal of the judgment in favor of the defendant in error (hereinafter called the plaintiff) for personal injuries. At the conclusion of all the evidence both parties moved for a directed verdict. The court in accordance with the rule announced in American Nat. Bank v. Miller, 185 Fed. 338, 107 C. C. A. 456, directed for the plaintiff and instructed the jury to fix the amount of damages. In reviewing the case we must therefore adopt that view of the facts, expressly proved or reasonably inferable, which is most favorable to the plaintiff. Observing such rule, we find the facts to be as follows:

On September 2, 1909, the defendant, as general contractor, engaged with the Central Bank & Trust Company to furnish all the labor and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

material for the erection of, and to erect for it, according to the plans
and specifications, a bank and office building in Memphis, Tenn. It
sublet the marble work to a marble company and the concrete work to
a firm, both of which subcontracting parties were admittedly independ-
ent contractors. The defendant, however, had entire charge, custody,
and control of the building from the time it was begun until it was
completed, delivered to, and accepted by the Trust Company, and kept
a superintendent on the premises for several hours each day to super-
vise its construction. He also had control of the placing of the various
kinds of material brought into the building preparatory to its installa-
tion. The plaintiff at the time he was injured was in the employ of the
above-mentioned subcontracting firm as a day laborer on concrete
work, and had been thus employed for some four or five weeks, during
which time the workmen employed about the building, without the de-
fendant's express authorization but with its knowledge and acqui-
escence, repaired at the noon hour to the room on the ground floor de-
signed for banking purposes to eat their dinners. The room had been
prepared by them for such purpose. They were accustomed to seat
themselves when eating at such places as suited their convenience, with-
out suggestion or direction from the defendant. As marble for the build-
ing arrived, it was necessary to store a portion of it temporarily in the
building. With permission of the defendant's superintendent, it was
placed by the marble company in the bank room until the portions of
the building for which it was intended were ready to receive it. The
defendant exercised no supervision or control over such company's
employés, nor did it give any instructions as to how the material should
be arranged. The places at which it was located within the room were
designated by the defendant's superintendent. Some of it was placed
on its edge lengthwise on the floor and leaned against the wall. An-
other portion, consisting of slabs, was stacked in an inclining position
against a column. The slabs were about five or six feet in length, from
one and a half to two feet in width, and about two inches in thickness.
Their lower ends, to avoid chipping, were placed on a plank, used with
defendant's permission, which rested loosely on the concrete floor, and
lay against another plank used as a run or walkway. There is no
prescribed method of piling marble, but the safer way, when the mate-
rial is of the dimensions named, is to place it lengthwise on its edge,
instead of upright on its end. The slabs were plainly visible to any one
in and about the room and were seemingly harmless, but, in fact, were
insecurely placed, and liable to fall, if jostled, and each was of such
weight as might seriously injure any one whom it might strike. Both
the plaintiff and one of the Murch brothers were present in the room
at the time and after the slabs were thus stacked, but the plaintiff was
wholly inexperienced as to handling and piling the same, and did not
know and was not warned of any danger incident thereto. On the op-
posite side of the street there was another building in process of erec-
tion, with which, however, none of the parties herein mentioned had any
connection. The workmen from such building at noon intermissions fre-
quently came to the bank building, with the knowledge of the defend-
ant and without its objection, to visit persons there employed. On the
day of the accident, which was some three or four days subsequent to

the stacking of the marble as above mentioned, one of the visiting workmen from the building across the street, while walking on the plank runway near the stacked marble, near which the plaintiff was sitting on a tool chest eating his dinner, struck with his foot or shook the plank on which the marble slabs rested, causing some of them to fall, one of which struck the plaintiff edgewise on or about the knee, inflicting an injury. He thereupon sued the defendant for damages.

The defendant's principal contentions are: (1) The plaintiff's injury was due to the collateral negligence of an independent contractor, for which the defendant as a general contractor is not liable, the present case not coming within any of the exceptions which affix liability to a general contractor; (2) the proximate cause of the plaintiff's injury was the intervening act of a trespasser in the building at the lunch hour on an errand of his own and who was not in the employ of any one connected with the building in the course of construction. The plaintiff's insistence is that it was the defendant's duty to keep the building in a reasonably safe condition for all employés therein, and that such duty was not delegable.

[3, 4] The doctrine of independent contractor is that one who lets work to be done by another according to such other's own methods and without being subject to the control of his employer, except as to the result of his work, is not liable to third persons for injury resulting from the negligence of the contractor or his servants. In the present case, however, the defendant's control of the building into which, through its assent, there was introduced by its subcontractor a newly created danger, rendered the defendant liable to one who, without fault on his part, was injured in consequence, if the defendant's duty was to protect the injured person from such danger and there was personal fault and neglect of duty on its part. Samuelson v. Cleveland Iron Min. Co., 49 Mich. 164, 171, 13 N. W. 499, 43 Am. Rep. 456.

[5] The practice of the workmen about the building to congregate in the bank room to eat their dinners was well defined and continuous, and with the knowledge and acquiescence of the defendant. Conceding, without deciding, that, while not engaged in the course of their employment, they were not entitled to the protection of employés from their respective masters, they nevertheless were not mere strangers to the defendant to whom no duty was owing. The defendant, knowing that the room was thus used and failing to object thereto, impliedly licensed them to use it for that purpose. Ellsworth v. Metheny, 104 Fed. 119, 122, 44 C. C. A. 484, 51 L. R. A. 389 (C. C. A. 6). Until the marble was stored in it, the room was apparently free from peril and reasonably fit and safe for the use to which it was appropriated. In view of the defendant's knowledge of and continued implied assent to the daily use of such place for the purpose stated, it was bound to anticipate the presence of the workmen there at the noon hour, and having consented that the situation might be changed by the introduction of marble into the room, it was bound to see that care commensurate with the circumstances was exercised in so stacking it as to avoid injury to them. As it suffered the change to be

so made as to import into a place of former safety an element of peril, of which the plaintiff was ignorant and could not know in the exercise of due care to avoid injury, its duty was to give reasonable warning of the danger to be encountered. The defendant could not, by employing the marble company, free itself of its own duty to its licensees, although they were servants of independent contractors. The defendant having intrusted to that company the performance of its duty to see that the marble was safely stacked for the protection of its licensees, such duty was performed by it through such company, and it is responsible for the discharge of the same. Had the obstruction created in the room been purely collateral to the work contracted to be done and entirely the result of the wrongful acts of the marble company, the defendant would not be liable. But the obstruction which occasioned the injury to defendant was the direct result of an act which the marble company was authorized to do, and the defendant, who awarded to it the contract for the marble work and authorized it to bring the marble into the building and store it there, is liable for the injury due to its negligent stacking, although the marble company may also be required to answer in damages. Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; Bailey, Pers. Inj. (2d. Ed.) 122. The injury was not due to the sole negligence of the marble company. It resulted from a cause which could have been prevented by the defendant, and which it ought to have foreseen and against which it ought to have guarded. That the performance of the entire marble work rested on an independent contractor did not, under the circumstances of this case, absolve the defendant from seeing that the marble was so stacked as not to inflict injury on the workmen or reasonably warning them of the added peril. Having failed to discharge its duty in these respects, and such failure having been, without plaintiff's fault, the direct and proximate cause of the injury to him as one of its licensees, the defendant was guilty of active culpable negligence, and was rightfully adjudged to respond in damages. It was the defendant's negligence of this character which fixes its liability. The liability of a person, situated as the defendant was, for active as distinguished from passive negligence, is pointed out with great clearness and force by Judge (now Mr. Justice) Lurton in the following language in Felton v. Aubrey, 74 Fed. 350, 358, 359, 20 C. C. A. 436, 444:

"It seems to us that many of the American cases which we have cited failed to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises, and those who come to harm by reason of subsequent conduct of the licensor inconsistent with the safety of persons permitted to go upon the premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of Corby v. Hill, 4 C. B. (N. S.) 562, and is a distinction which should not be overlooked. If there be any substantial difference between the legal consequence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others that the owner of the premises should not be held liable to one who gets upon another's premises for his own uses, and sustains some injury by reason of the unfitness

of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which will pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered."

The rule so stated has been observed by this court in Ellsworth v. Metheny, supra, Tutt v. Ill. Cent. R. Co., 104 Fed. 741, 744, 44 C. C. A. 320, Wright v. Stanley, 119 Fed. 330, 332, 333, 56 C. C. A. 234, Dishon v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 126 Fed. 194, 206, De Haven v. Hennessy Bros. & Evans Co., 137 Fed. 472, 476, 69 C. C. A. 620, and Winters v. B. & O. R. Co., 177 Fed. 44, 50, 100 C. C. A. 462. See, also, Northern Pac. Ry. Co. v. Jones, 144 Fed. 47, 75 C. C. A. 205 (C. C. A. 9), and Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361 (C. C. A. 8).

Ellsworth v. Metheny is instructive and closely in point. There was evidence that Metheny was killed in an entry in a coal mine where the miners were accustomed to go at noon for the purpose of eating their dinners and for social intercourse. Indulgence in this practice was with the knowledge of and without objection from the owner. Although Metheny was not, during such noon hour, engaged in the course of his employment and consequently not entitled to the protection accorded an employé, he was, nevertheless, a licensee using the entry with the implied consent of his employer. Some three weeks prior to his death the mineowner had introduced into and strung along the wall of such entry a highly dangerous electric wire, with which the workmen might come in contact when passing back and forth. It was thought that the mineowner might not, without responsibility, actively change a situation of previous safety by introducing a highly dangerous device into a place thus used with his consent, and that sound morals and just treatment demanded that the licensee should have had notice of the new danger which he was likely to encounter in using the premises. It was said that if, on a rehearing of the case, the testimony should warrant the finding that the electric apparatus as actually introduced into the mine was dangerous to the life and safety of the employés and they were ignorant of that fact, or could not know it in the exercise of ordinary care to avoid injury, and the same was placed with the knowledge and consent of their employer in a part of the mine which the men were accustomed to use and occupy during the hour of rest and refreshment when not actively engaged in their duties, a duty was imposed upon the employer in thus introducing into his mine a new and dangerous element properly to guard and protect the men, or to give notice of the danger to those whom he should reasonably apprehend were likely to be brought into contact therewith.

Another and recent case in which the rule here invoked was applied and with the same result is Wilson v. Hibbert, 194 Fed. 838, 114 C. C. A. 542.

[6] .That the fall of the slab was caused by a workman from another building does not operate to relieve the defendant from liability. The admission of strangers to the bank building had not been forbidden, and visitations by workmen from across the street had been frequent and with the defendant's knowledge. The conduct of the one who, in walking by the stacked marble on an established plankway in daily use, so jostled it as to cause the falling of the slab which struck the plaintiff, was not unusual, and the passage of any other person over such plankway in the course of his employment might well have produced the same result. Had the slabs been laid lengthwise on the floor, or otherwise safely placed, the accident would not have occurred. Within the rule stated in Toledo, St. L. & W. R. Co. v. Kountz, 168 Fed. 832, 94 C. C. A. 244 (C. C. A. 6), the proximate cause of the plaintiff's injury was the dangerous method in which the marble was stacked.

Other errors are assigned and argued, but they are not well taken, and are not deemed of sufficient importance to warrant extended consideration.

No error appearing on the record, the lower court is affirmed.