## FLEISCHMANN MALTING CO. v. MRKACEK.

(Circuit Court of Appeals, Seventh Circuit. August 4, 1926.)

No. 3673.

**1. Appeal and error ⬉1002.**

Conclusions of jury on facts as to which evidence is in conflict must be accepted by appellate court.

**2. Negligence ⬉32(2)—Person injured considered invitee rather than licensee, when on premises for mutual benefit of parties.**

What plaintiff regularly did on defendant's premises being to their mutual benefit, picking up grain and sticks from the tracks for herself and keeping places clean, she must be considered an invitee rather than mere licensee, relative to care owing her.

**3. Negligence ⬉32(2)—Person injured held invitee in going on premises with permission of foreman in immediate control.**

To make plaintiff an invitee on defendant's premises, relative to care owing to her, it was enough that foreman at defendant's grain elevator, who permitted plaintiff to pick up grain and sticks from the track for herself and asked her to clean up where she worked, was in immediate charge and control of moving, placing, loading, and unloading cars, so that he could be considered to have apparent authority.

**4. Negligence ⬉52—Where invitee was injured from unusual movement of car, warning of usual dangers was not enough.**

It was not enough that invitee, on premises where cars were being moved and unloaded at grain elevator, was warned of general dangers;

accident occurring from unusual and unintended movement of spotted car from clutch of moving apparatus not being completely opened.

**5. Negligence ⫘124(1).**

Evidence that plaintiff had been convicted of trespassing on premises of another is inadmissible on question of her relation when injured on defendant's premises.

In Error to the District Court of the United States for the .Eastern Division of the Northern District of Illinois.

Action by Eva Mrkacek against the Fleischmann Malting Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. F. Dammann, Jr., of Chicago, Ill., for plaintiff in error.

Charles C. Spencer, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The judgment assailed was upon a verdict for defendant in error in her suit for personal injury.

Plaintiff in error operated a grain elevator and malthouse at Chicago. Adjacent to its buildings, and between them and the tracks of the Pennsylvania Railroad, there were on its premises two switch tracks for handling its cars of grain, 8 or 10 carloads daily, which were customarily switched there early in the day. The cars would then be moved by a rope operated by power within the elevator, and each loaded car run onto a scale on one of these switch tracks, weighed, and then moved in same manner to a place opposite a door in the elevator or in a small building next to it, the doors of the car opened, and the car unloaded by power shovels, the grain dropping into hoppers for elevation and delivery to storage bins. As each car was emptied, it was in the same manner moved back on the scale and weighed, then moved to another part of the switch track, and another loaded car put through the same course. When all were unloaded, they were coupled together and left on the switch track, to be later hauled away by a railroad switch engine. This had been the usual daily practice for years. The rope whereby the cars were moved for weighing and spotting the cars for unloading was wound upon a drum which was operated by a clutch and a lever; this mechanism being in the small building next to the elevator. The lever, operated by an employé, caused the clutch to contact or be released as desired, thus moving or stopping the movement of the drum.

Defendant in error had for about 13 years prior to the trial lived in her home a block and a half from the elevator, and for about 7 years next preceding the accident she and other women living in the vicinity were in the habit of going almost daily to the premises at the elevator and on these switch tracks, gathering up for their chickens what grain was along the tracks and in a pile of waste near by, and sweeping out what chanced to be left in the emptied cars which were on the switch track for removal, and picking up pieces of wood left thereabout. The foreman in charge of the plant and the other employés saw her and the other women there almost daily doing these things, and were well aware of the practice. At the time in question a car had been "spotted" for unloading, and either before the actual unloading had started or while in progress, the clutch in some manner came into operative contact causing the drum to revolve and the car to which the rope was attached to move, the car striking defendant in error, who was on the track for the indicated purpose, causing the wheels to pass over her, cutting off her legs.

[1] Above facts are undisputed. Other facts, which bear directly on the question of liability, are in sharp controversy. As to them this court must accept the verdict of the jury.

There was evidence tending to show that during all the time this woman and others in her situation were coming upon the premises for the purposes indicated, no objection whatever was made to their doing so, but, on the contrary, that they were kindly treated by the foreman in charge, and other employés, and that the foreman from time to time told them they might pick up the grain that fell on and about the switch tracks and in cars, and the pieces of wood that frequently lay there from breaking open of grain doors which were nailed to the cars, often causing the boards to break and pieces of wood to fall, and that the foreman from time to time told her and the other women with her to sweep up the places about which they were gathering the grain and wood so that they might be left clean. While it might seem from the evidence for the defense that a large part of the employés' time was devoted to warning and chasing these women off the premises during all these years, and from the evidence for the woman that no less of the employés' time was occupied in welcoming and inviting them there and urging them to thoroughly sweep and clean up the premises where they were thus gleaning, it was for the jury to find where truth thereon lay, and this court cannot disturb its conclusion.

The contention for reversal is predicated by plaintiff in error upon four propositions, stated in its brief as follows: (1) "The plaintiff was a mere licensee." (2) "The permission given the plaintiff to enter the premises and gather and clean up the grain was not given by any one having authority to do so." (3) "Even where the law imposes a duty upon an owner of land or of a business building toward an invitee, the extent of such duty is fulfilled if the company warns the invitee of unknown dangers." (4) "The evidence of the conviction of defendant in error for violation of a municipal ordinance should have been admitted."

[2] The first proposition is predicated upon the assumption that the woman was on the premises wholly for her own convenience and purposes, and to no extent for the benefit of plaintiff in error. The facts, which under the evidence the jury might have found, do not warrant this conclusion. While doubtless she was there primarily for her own advantage, the evidence tending to show she was asked by those in charge to sweep up the places where she worked, and in effect to keep them clean, implies some expected advantage to plaintiff in error. There was evidence from which the jury might have found, as they doubtless did, that what she there did was to the mutual advantage of herself and plaintiff in error, wherefore she must be considered in the light of one invited to be there. Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235.

[3] The second we do not consider tenable. This plant was located many blocks from other plants in Chicago of plaintiff in error, and miles from its general office. While there was a general superintendent, it was the foreman who was in immediate charge of the moving, placing, loading, and unloading of the cars, and the evidence indicated he had apparent authority to permit to be done what was done, even to the extent of asking these women to sweep up all of the droppings about the premises where they were working. Being in immediate control, the jury was warranted in concluding that he had such apparent authority, and this in our judgment was sufficient. Ill. Cent. R. R. Co. v. Griffin, 80 F. 278, 25 C. C. A. 413; De Haven v. Hennessey Bros. Co., 137 F. 472, 69 C. C. A. 620.

[4] If the injury had been the result of the usual ordinary operation of this plant, a very different question would be presented; as if, for instance, the accident had happened while switching in or switching out the cars, or spotting them in the usual way for unloading and removing them after being unloaded, or other of the ordinary operations on these premises with which defendant in error was presumably not less familiar than the employés thereabout. It is evident that nothing of this kind caused the accident. Neither she nor the employés had any reason to believe that the car would be moved until it had been unloaded; indeed, such was the apparent certainty that for a considerable time it would remain stationary, that, as some of the employés testified, they planted a ladder upon its roof against the side of the adjacent building on which they were making some repairs, and were on the ladder when the car began moving, hastily and fortunately dismounting without injury to themselves. It was testified for plaintiff in error that the mechanism was in perfect order; that never before or after had there been such an occurrence; but the employé who had charge of the operation of the lever said, when he looked at it after the accident, he found that the clutch was not thrown into full operative position but just touched on the edge sufficient to start the drum, a circumstance which fairly indicates that when thrown out of contact to stop the movement of the rope when the car was spotted, the parts were not sufficiently separated, but left just close enough together so that a slight jarring or other influence might put them in sufficient operative relation, which would not have occurred had the separation been complete. To the knowledge of this woman, these were not general switch tracks like those upon a railroad, upon which moving cars might at any time be expected. They were the private tracks of plaintiff in error, not used for any but its own purposes, and she had good reason to believe the car would remain stationary for the quite considerable time required to unload it, giving her abundance of time in safety to do there what the jury evidently found she was expected to do, when the car suddenly and without warning was moved, causing the injury.

[5] As to the fourth proposition it seems that for the purpose of proving intent to trespass defendant in error was questioned whether she had ever been driven off the adjacent Pennsylvania Railroad tracks while she was gathering coal and other things upon that right of way. She denied having been so driven off, denying also that she had been arrested and fined under a city ordinance for trespass upon the railroad company's right of way. Plaintiff in error offered evidence to show that she was so arrested and fined under city ordinance, which the court declined to receive. We perceive no error in this. Her relations with plaintiff in error were in no manner dependent upon her experiences with the

Pennsylvania Railroad. Chantangco v. Abaroa, 218 U. S. 476, 31 S. Ct. 34, 54 L. Ed. 1116; 2 Freeman on Judgments (5th Ed.) § 654; 1 Greenleaf on Evidence (15th Ed.) § 537.

The judgment is affirmed.