PETER KIEWIT SONS' CO., a corporation, Plaintiff in Error,

v.

Rodney W. GRIMME and R. B. Pease, individually and as co-partners d/b/a G & P Trucking Service Company, Defendants in Error.

No. 42356.

Supreme Court of Oklahoma.

April 21, 1970.

Rehearing Denied June 16, 1970.

Sanders, McElroy & Whitten, Tulsa, for plaintiff in error.

Covington, Gibbon & Poe, A. M. Covington, Tulsa, for defendants in error.

BLACKBIRD, Justice.

The parties to this appeal appear in the same order in which they appeared in the trial court and will hereinafter be referred to by their trial court designations of "plaintiff" and "defendants". The subject action arose out of a collision between one of the plaintiff's truck-type motor vehicles, hereinafter referred to as the "Kiewit vehicle", and another truck, hereinafter referred to as the "G & P vehicle", on a portion of the Indian Nation Turnpike, then under construction for the Oklahoma Turnpike Authority hereinafter referred to merely as the "Authority".

The Authority had entered into contracts with various road building contractors to construct different segments of said Turnpike. Plaintiff had contracts for two of these segments, that were separated by another segment being constructed by another road building contractor by the name of Roberts & Western, sometimes hereinafter referred to as "R & W". For clarity and brevity, plaintiff's segments of the road will hereinafter be referred as Segments "One" and "Three", while R & W's will be referred to as Segment "Two".

Both of these contractors were furnished sand and gravel for their construction by the same supplier at a certain price per ton, delivered to stockpiles established on their respective segments of the road. These deliveries were made by defendants, pursuant to their contract with the supplier, in dump trucks such as the G & P vehicle, which consisted of a 1965 Model B-73 Mac tractor pulling a 27-foot long tandem-wheeled Fruehauf trailer.

The Kiewit vehicle was called a "grease truck" or "mobile service station". Plaintiff had had it built specially to service the motorized equipment it used on the road with fuel, air, water and grease.

At some time before the collision, plaintiff had finished the concrete paving on Segment One's eastern, or north bound, half and had restricted travel over it by vehicles, other than its own, to the evening or nighttime hours. Later, one of the defendants obtained permission, from plaintiff's Superintendent, for defendants' trucks to travel over this segment of the road during the regular daytime work shift; and the collision occurred during the first day this arrangement was in effect, when the G & P vehicle, loaded with 25 or 30 tons of sand, destined for one of the stockpiles on R & W's Segment Two of the road, overtook and was attempting to pass the Kiewit vehicle, while both vehicles were traveling in a southerly direction on the newly paved eastern half of Segment One. As a result of the collision, both vehicles overturned and were severely damaged.

When plaintiff thereafter sought recovery against defendants in the present action for damages to its Kiewit vehicle in the total amount of $4,102.38, it alleged in its petition that the collision was the result of defendants' negligence in various particulars.

In their answer, defendants alleged, in substance, that the collision was caused by negligence on the part of the plaintiff's truck driver in suddenly, and without warning, driving the Kiewit vehicle in front of defendants' G & P vehicle. In a cross-petition wherein defendants alleged that their G & P vehicle suffered damages from the collision in the total sum of $7,-639.32, they further alleged, among other things, that plaintiff's driver failed to signal that he was about to turn in front of defendants' G & P vehicle, and that he drove the Kiewit vehicle left of the pavement's center, in violation of the rules of the road and statutes of this State.

At the pretrial conference on the case, it was apparently agreed that only plaintiff's alleged cause of action against defendants would be tried to the jury.

At the trial, the evidence introduced by the parties as to how the collision occurred, after the G & P vehicle overtook the Kiewit vehicle, differed in several material respects. Defendants' evidence, including the testimony of the defendant, Grimme, who was driving the G & P vehicle, was to the effect that, as his vehicle was overtaking the Kiewit vehicle, he started turning it into the eastern lane of the 24-foot wide concrete paving (in order to pass the Kiewit vehicle on its left side) at a point 40 to 60 feet behind the Kiewit vehicle, and that as his vehicle came abreast of the Kiewit vehicle, the latter, without a signal or warning of any kind, veered to the left, striking the G & P vehicle. According to Grimme, the G & P vehicle's right front wheel came in contact with the Kiewit vehicle just behind its cab, temporarily locking said wheel and causing Grimme to lose control of the G & P vehicle and both vehicles to leave the paving and turn over.

Plaintiff's version of the collision, testified to by its driver, Hodge, and corroborated by a fellow employee, Dunn, who was riding in the Kiewit vehicle's cab with him, was that the G & P vehicle struck the Kiewit vehicle's rear end just as the latter was starting to turn right to proceed down the Turnpike's dirt median to oil one of plaintiff's water pumps located about 150 yards further south. Hodge denied that he had turned his truck either to the right, or to the left, before the G & P truck struck it in the rear. He, too, testified that the two trucks temporarily locked together, but he further testified that the G & P vehicle broke loose when the Kiewit vehicle started to turn over, that the G & P vehicle was on the "other side" of the pavement, and that it then traveled down the road "ahead" of the Kiewit vehicle.

At the close of the evidence, plaintiff moved for a directed verdict, and, after this motion was overruled, it requested the court to give the jury two instructions. The second of these requested instructions

would have told the jury, in material substance, that certain statutory rules of the road do not apply to the driver of a motor vehicle engaged in highway construction. Plaintiff's first requested instruction, which contained a direction to render a verdict for it, would have also told the jury that defendants were licensees using plaintiff's work site, that they had the right to use it *only so long as they did not interfere with plaintiff's equipment, and* that *they were liable to plaintiff for all damages arising from such interference.* The court refused to give these instructions, and, instead, gave the jury, among others, the following instructions, to all of which plaintiff was allowed exceptions:

Instruction No. 3:

"The mere proof of an accident or injury carries with it no presumption of negligence, but the burden of proof rests upon the party alleging negligence to establish the same by a preponderance of the evidence, and likewise it is incumbent upon such party to show that the said negligence thus established was the proximate cause of the injury and damage, if any received by the party alleging same."

Instruction No. 4:

"While the ordinary rules of the road relative to keeping to the right of center line, turning, stopping, etc. are not applicable to motor vehicles and other equipment while actually engaged in construction work on the surface of a highway, still vehicles or equipment of the various contractors engaged in such work, owe to each other the duty of exercising reasonable care in their operations so as not to negligently cause damage, having due regard to traffic and existing conditions."

Instruction No. 6:

"You are instructed that all persons operating motor vehicles on the highways or elsewhere owe to the public and other vehicles and pedestrians the duty of controlling and driving such motor vehicles carefully and to use due care

and to avoid causing an accident, and in the performance of that duty they are bound to take all reasonable caution which ordinarily prudent persons usually exercise under the same or similar conditions."

Instruction No. 7:

"You are instructed that it is the duty of a driver of an automobile to keep a reasonable lookout for the approach of all other vehicles which might interfere with the operation of a motor vehicle or constitute a hazard in the operation of a motor vehicle; and a failure on the part of either driver to perform such a duty makes said driver guilty of negligence."

After the jury's deliberations, it returned a verdict for defendants; and judgment was rendered accordingly. After the overruling of its motion for a new trial, plaintiff lodged the present appeal.

The idea underlying plaintiff's position, both at the trial and in its present appeal, seems to be that since, during the period in which the collision occurred, the Turnpike was unfinished and not yet accepted by the Authority, its Segment One was under plaintiff's exclusive dominion and control; that defendants' trucks (like the G & P vehicle) traveled over it at plaintiff's sufferance; and therefore the duty of avoiding accidents (such as the one this action concerns) devolved solely upon the defendants. Consistent with plaintiff's theory, its counsel, during his cross-examination of the defendants, interrogated each concerning plaintiff's Superintendent's aforementioned consent to defendants' request that the road's Segment One be opened to daytime travel by defendants' trucks, beginning on the day of the collision. This is reflected in the following excerpt from the cross-examination of the defendant, Pease:

"Q. * * and the superintendent, when you talked to him, said to use extreme caution?

A. Yes sir.

Q. You were to use extreme caution with reference to the Kiewit equipment?

A. In the congested areas.

Q. Well this was a work area of Kiewit, wasn't it?

A. It was not a congested area.

\* \* · \* \* \* \*"

Said defendant had previously testified on direct examination as follows:

"A. I had a conversation with their job superintendent earlier the day of the accident, and had discussed with him using the road, since that was the first day we had used it in daylight and asked him what we would have to do, and if he was going to post any speed limits or anything else, and he said no just to use extreme caution in congested areas and I said 'If we travelled 55 to 60 miles an hour on open stretches is that alright with you?' And he said 'Yes.'

Q. What did you people do with reference to meeting and passing other vehicles as you were traveling on this highway?

A. We used the normal rules of the road.

Q. Alright, in other words, you passed to the right?

A. Yes sir.

Q. And you would go to the left as you passed another vehicle?

A. Just the same as you would if you were on the highway today.

\* \* \* \* \* \*"

Excerpts from the cross-examination and re-direct examination of the other defendant, Grimme, are as follows:

"Q. And prior thereto Peter Kiewit had closed this area to you, had they not, for day time travel?

A. Yes, sir, we had to haul at night for awhile.

Q. Isn't it the custom and practice that when you haul through somebody's area you must respect their equipment and move your equipment around them?

A. Yes, sir.

Q. You are to give right of way to construction equipment and move your equipment around them, the construction equipment that is in the work area, are you not?

A. That's correct.

Q. That is the custom and the practice, is it not?

A. Yes.

\* \* \* \* \* \*

Q. In driving along the road as you were doing this work, what did you do with reference to the way you traveled with meeting other vehicles and passing other vehicles, how did you drive?

A. Drove in a normal manner as you would on a two lane road.

Q. Stayed to your right and passed to your left?

A. Yes.

Q. Did you have people pass you going the same direction?

A. Yes sir.

Q. Did you let them go on by and stay on your own side of the road?

A. Yes sir.

Q. That wouldn't be true if you had something like a paver or something like that, would it?

A. No an oversized load you would move over or do something so they could get by.

\* \* \* \* \* \*"

With reference to plaintiff's charges, in its arguments for reversal, that the trial court erred in overruling its motion for a directed verdict and in instructing the jury, plaintiff argues, in substance, that the duties and obligations of its grease truck driver, Hodge, and of defendants' sand truck driver, Grimme, toward each other in the operation of their respective vehicles was defined and governed by the terms of the "license" defendants had from plaintiff

to drive their trucks on the road's Segment One, and by plaintiff's relatively superior position of authority and responsibility for what transpired on that Segment, which included the regulation of traffic thereon, to accommodate accomplishment of its road building task, by protecting it against delay and interference and guarding its employees and equipment against injury and break-down. Plaintiff's counsel points to the testimony of its area manager, Mr. Darvo, in which he indicated that his Company's position on such a road building project, where it was the general contractor, was that if its trucks needed the "right-of-way" they should have it, and that it was the obligation of other truckers "to watch for any of our vehicles", and that plaintiff had a definite understanding with other contractors, and subcontractors, using Segment One for travel, "* * * that in work areas any vehicle should be traveling at a speed that he could stop at a short notice." Counsel also cites this witness' testimony in support of their brief's statement that plaintiff's and defendants' agreement was that defendants' trucks would go around and give way to plaintiff's equipment; and they would have us uphold their conclusion that, instead of the drivers of the two trucks having reciprocal duties of care toward each other (as the trial court instructed the jury), it was solely the responsibility of defendants to avoid the collision between their trucks and plaintiff's, and that, since this was not done, defendants' driver must be presumed to have been negligent.

We do not think plaintiff's argument is supported either by authority or by the evidence in this case. None of the authorities cited by the parties in support of their respective arguments pro and con of the issue here are directly in point.

 While it is true that in hauling sand to the Turnpike's aforementioned Segment Two, as they were doing when the collision occurred, defendants were not engaged (at that particular time) in the role of a subcontractor of plaintiff (Segment One's principal contractor), it is our opinion that because of the necessity of cooperation between plaintiff and the other general contractor, Roberts & Western, in building adjoining segments of the Turnpike, and their implied obligation to cooperate with each other in creating, from their separate efforts, a unified and uniform expanse of turnpike, of which each of said contractors' segments was an integral and necessary part, each owed to the other's subcontractors and to the latters' subcontractors, a duty greater than that of a licensor to his licensee. While it does not specifically appear whether or not plaintiff gave its permission to defendants to drive their trucks, carrying road materials bound for Roberts & Western's road Segment Two, in return for a similar concession, or accommodation, from Roberts & Western to allow such trucks to travel its said road segment in delivering such materials to plaintiff's Segments One and Three, we think it is reasonable to conclude that such an arrangement would expedite delivery of such materials to both of these contractors' job sites and be mutually advantageous to them. This Court has held that where the party in charge of premises, and the party using the premises, have a common or mutual advantage in the latter's use thereof, an invitation for such use may be inferred. See C. R. Anthony Co. v. Williams, 185 Okl. 564, 94 P.2d 836 (1st syll.). We think that, under the circumstances of this case, the defendants, while engaged in the mission they were on when their G & P vehicle collided with the Kiewit vehicle, must be considered in the same category as one of the plaintiff's subcontractors and therefore entitled to the same duty of ordinary care that principal contractors on a building project owe to subcontractors engaged on the same project. In this connection, see Lucas v. Walker, 22 Cal.App., 296, 134 P. 374 (1st syll.); Murch Bros. Constr. Co. v. Johnson, (C.C.A. 6 Cir.), 203 F. 1, 121 C.C.A. 353 and other cases discussed in the annota-

tion at 20 A.L.R.2d 868, 914. The reciprocal nature of such parties' duties toward each other is reflected in the annotation appearing in 38 A.L.R. 403, 471, as follows:

"Where several persons are engaged in the same work, in which the negligent or unskilful performance of his part by one may cause danger to the others, in which each must necessarily depend for his safety upon the good faith, skill, and prudence of each of the others in doing his part of the work, then *it is the duty of each*, to the others engaged in the work, to exercise the care and skill ordinarily employed by prudent men in similar circumstances." (Emphasis added)

This Court applied similar principles in Lisle v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128.

 While much of plaintiff's argument is premised on its own evidence that defendants' truck struck its truck before coming along the side of it, it is recognized in other portions of its argument that there was a conflict in the evidence as to this; and an examination of the evidence leaves no doubt but that it was for the jury to decide whether negligence of the plaintiff's driver or negligence of the defendants' driver caused the collision.

Without detailing all of plaintiff's arguments, we think it is sufficient to say that on the basis of the evidence and the above indicated legal priciples applicable thereto, we must conclude that the trial court committed no error in overruling plaintiff's motion for a directed verdict, and that said court's instructions did not contain the prejudicial errors attributed to them by plaintiff. It therefore follows that said court's order and/or judgment overruling plaintiff's motion for a new trial was not error on those grounds, and that said judgment must be affirmed. It is so ordered.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.